| | |
|---|---|
| THE UNITED STATES OF AMERICA for the use and benefit of J. SCADUTO & SON, INC., | UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK |
| Plaintiff, | |
| v. | Civil Action No. 08 CV 01885 (GEL) "ECF Case" |
| LIBERTY MUTUAL INSURANCE CO. and AGENCY CONSTRUCTION CORP., | |
| Defendants. | |

PLAINTIFF J. SCADUTO & SON, INC.'s MEMORANDUM OF LAW IN SUPPORT OF ITS RULE 12 MOTION FOR JUDGMENT ON THE PLEADINGS AND DISMISSAL OF DEFENDNAT AGENCY CONSTRUCTION CORP.'s COUNTERCLAIMS

THE LAW OFFICES OF PAUL A. MONTUORI, P.C.
Paul A. Montuori, Esq. (PM 5787)
*Attorney for Plaintiff J. Scaduto & Son, Inc.*
265 Post Ave., Suite 270
Westbury, NY 11590
Phone (516) 338-4714
Facsimile (516) 334-2539
pmontuori@montuorilaw.com

Of Counsel:

Kevin C. Palmeri, Esq. (KP 7556)
The Law Offices of Kevin C. Palmeri, LLC
2100 Deer Park Ave., Suite 3
Deer Park, NY 11729

William G. Kelly (WK 2982)
Goldberg Segalla LLP
170 Hamilton Ave., Suite 203
White Plains, NY 10601

## TABLE OF CONTENTS

Table of Authorities ..............................................................................................................ii

Preliminary Statement.............................................................................................................1

Uncontested Facts Established by the Pleadings .....................................................................2

Standard for Granting Motion..................................................................................................5

Argument ..................................................................................................................................6

I.     The Pleadings Establish Agency's Liability for Breach of Contract. ..............................8

       a.  The May 22 Fax Establishes Agency's Breach of Contract Liability For
           Failure to Pay J. Scaduto Its Termination for Convenience Damages.............10

       b.  Any Contrary Reading of the May 22 Fax Also Establishes Agency's Liability for
           Breach of Contract………………………………………………………………...14

       c.  Agency's Affirmative Defenses are Factually and Legally Insufficient to Prevent
           Judgment on the Pleadings for J. Scaduto………………………………………16

II.    Agency's Counterclaims are Legally Insufficient and Should be Dismissed.............21

       a.  The Existence of a Termination for Convenience Precludes Agency's Advancement
           of a Breach of Contract/Indemnity Claim Against J. Scaduto…………………..21

       b.  Agency's Acknowledgment of Its Express Contract with J. Scaduto Requires
           Dismissal of its Negligence Counterclaim………………………………………22

Conclusion……………………………………………………………………………….....24

# TABLE OF AUTHORITIES

Cases

*Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328 (2d Cir. 2006)……………………..6

*Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc.*,
404 F.3d 566 (2d Cir. 2005) ……………………………………………………………………19

*Bank Julius Baer & Co. v. Waxfield Ltd.*, 424 F.3d 278 (2d Cir. 2005) …………………………..11

*Centro Medico del Turabo, Inc. v. General Motors Corp.*, 406 F.3d 1 (1st Cir. 2005)…………..7

*Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 NY2d 382,
521 N.Y.S.2d 653 (1987) ……………………………………………………………………...22, 23

*Collins v. Harrison-Bode*, 303 F.3d 429, 433 (2d Cir. 2002) ………………………………10, 11

*Consumers Power Co. v. Nuclear Fuel Servs., Inc.*, 509 F. Supp. 201 (W.D.N.Y. 1981) ..........15

*Dalton v. Educational Testing Serv.*, 87 N.Y.2d 384, 639 N.Y.S.2d 977
(1995)…………………………………………………………………………………………...23

*De Kwiatkowski v. Bear, Stearns & Co.*, 306 F.3d 1293 (2d Cir. 2002)………………………..23

*Desco Vitro Glaze of Schenectady, Inc. v. Mechanical Const. Corp.*, 159 A.D.2d 760
N.Y.S.2d 185 (3d Dep't 1990) ………………………………………………………………….8, 9

*Duse v. Int'l Bus. Machs. Corp.*, 252 F.3d 151 (2d Cir. 2001) …………………………….....11, 18

*Ettlinger v. National Surety Co.*, 221 N.Y. 467, 117 N.E. 945 (1917)…………………………16

*Filmline (Cross-Country) Prods., Inc. v. United Artists Corp.*, 865 F.2d 513
(2d. Cir. 1989)…………………………………………………………………………………..15

*Fourth Branch Assoc. Mechanicville v. Niagara Mohawk Pr. Corp.*, 235
A.D.2d 962, 653 N.Y.S.2d 412 (3d Dept. 1997)…………………………………………………23

*Fruin-Colnon Corp. v. Niagara Frontier Transp. Auth.* 180 A.D.2d 222,
585 N.Y.S.2d 248 (4th Dept. 1992)………………………………………………………………22

*G & R Elec. Contractors, Inc. v. State*, 130 Misc. 2d 661,
496 N.Y.S.2d 898 (Ct. Cl. 1985)...................................................................8, 9

*Gala Jewelry Inc., v. Harring*, 2006 WL3734202 (S.D.N.Y.  Dec. 18, 2006) ...........19, 20

*General Supply & Constr. Co. v. Goelet*, 241 N.Y. 28, 148 N.E. 778 (1925)..............15, 16

*Ivan Mogull Music Corp. v. Madison-59th Street Corp.*, 162 A.D.2d 336,
556 N.Y.S.2d 906 (1st Dep't 1990)..................................................................24

*Int'l Minerals and Mining Corp. v. Citicorp N. Am., Inc.*, 736 F. Supp. 587
(D.N.J. 1990)...............................................................................................23

*In re Tamoxifen Citrate Antitrust Litig.*, 429 F.3d 370 (2d Cir. 2005) ...........................6

*J.D. Hedin Constr. Co. v. United States*, 187 Ct. Cl. 45, 408 F.2d 424 (1969)...............12

*Kaplan v. Aspen Knolls Corp.*, 290 F. Supp. 2d 335 (E.D.N.Y. 2003).........................7

*Lisbon Contractors Inc., v. United States,* 828 F.2d 759, 765 (Fed Cir. 1987)...............12

*Linan-Faye Constr. Co. v. Housing Auth. of the City of Camden,*
49 F.3d 915 (3d Cir. 1995) .............................................................................12

*Matusovsky v. Merrill Lynch*, 186 F. Supp. 2d 397 (S.D.N.Y. 2002) .........................21

*McCarthy v. The Dunn & Bradstreet Corp.,* 482 F.3d 184 (2d Cir. 2007)....................6

*MCK Building Assoc. v. St. Lawrence*, 301 A.D.2d 726, 754 N.Y.S.2d 397
(3d Dept. 2003)...........................................................................11, 14, 16

*Midtown Contracting Corp. v. Goldsticker*, 165 A.D. 264,
150 N.Y.S. 809 (1st Dept. 1914) ....................................................................12

*Moranski v. General Motors Corp.*, 433 F.3d 537 (7th Cir. 2005) ..............................7

*O'Neil v. Ret. Plan for Salaried Employees of RKO Gen., Inc.*,
37 F.3d 55 (2d Cir.1994) ...............................................................................10

*Paragon Restoration Group v. Cambridge*, 42 A.D.3d 905
839 N.Y.S. 2d 658 (4th Dept. 2007).................................................................22

*Peru Associates, Inc. v. State*, 70 Misc. 2d 775, 334 N.Y.S.2d 772 (Ct. Cl. 1971) ..........14

iii

*Rice Systems, Inc. v. U.S.*, 62 Fed.Cl. 608 (2004) ………………………………………...12

*Rapoport v. Asia Elecs.*, 88 F. Supp. 2d 179 (S.D.N.Y. 2000) …………………………...21

*Roberts v. Consolidated Rail Corp.* 893 F.2d 21 (2d. Cir. 1989) …………………………...10

*Rodi v. Southern New England School of Law*, 389 F.3d 5 (1st Cir. 2004) ………………..7

*Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639 (2d Cir.1988) …………………………...6

*Schlesinger v. United States*, 182 Ct. Cl. 571, 390 F.2d 702 (1968)………………………...12

*Stiver v. Good & Fair Carting & Moving, Inc.*, 32 A.D. 3d 1209, 822 N.Y.S.2d 178
(4th Dept. 2006)……………………………………………………………………………....23

*Smith v. Wal-Mart Stores*, 2006 WL 27111468
(N.D. Cal. September 20, 2006)………………………………………………………………..20

*Tishman Constr., Inc. v. City of New York*, 228 A.D.2d 292,
643 N.Y.S.2d 589 (1st Dept. 1996)………………………………………………………..*passim*

*Torncello v. U.S.*, 681 F.2d 756 (Ct. Cl. 1982) ………………………………………………8

*Transformational Strategies Consulting, Inc. (TSCI)* v. *ACS State Healthcare, LLC*,
526 F. Supp. 2d 66 (D.C. 2007) ……………………………………………………………9, 12

*United States v. Broad. Music, Inc.*, 275 F.3d 168 (2d Cir. 2001) …………………………11

*United States v. IBT*, 970 F.2d 1132 (2d Cir. 1992) ………………………………………..19

*Walcutt v. Clevite Corp.* 13 N.Y.2d 48, 241 N.Y.S.2d. 834 (1963)………………………...16

<u>Statutes</u>

40 U.S.C. § 3131 *et. seq*...…………………………………………………………………..5

<u>Federal Rules</u>

Fed. R. Civ. P. 11…………………………………………………………………………..21

Fed. R. Civ. P. 12(b)(6) ………………………………………………………………....*passim*

Fed R. Civ. P. 12(c) …………………………………………………………*passim*

Fed. R. Civ. P. 9(c) …………………………………………………………...20

Other Authorities

*The Compact Edition of the Oxford English Dictionary* 934-35 (Jan. 1984)………8

## Preliminary Statement

This memorandum of law is respectfully submitted in support of plaintiff J. Scaduto &

Son, Inc's., (" J. Scaduto's") motion for an order: (i) pursuant to Rule 12(c) of the Federal Rules

of Civil Procedure granting plaintiff J. Scaduto judgment on the pleadings as to defendant

Agency Construction Corp.'s ("Agency's") breach of contract liability for failure to pay damages

resulting from a termination for convenience of the Subcontract Agreement; and (ii) pursuant to

Rule 12(b)(6) of the Federal Rules of Civil Procedure dismissing defendant Agency's two

counterclaims for legal insufficiency.

As set forth herein, J. Scaduto is a trade contractor whose participation in the construction

project at issue was terminated at the convenience of the general contractor Agency.  J. Scaduto

now asserts claims stemming from Agency's failure to pay the proper measure of damages

resulting from the termination.  Plaintiff's motion seeks to narrow the issues by pointing out that

the accepted facts establish defendant Agency's threshold liability for breach of contract.

The pleadings conclusively establish uncontested facts that show J. Scaduto was

terminated for convenience.  Agency has failed to live up to its clear-cut legal obligations when

invoking such a termination.  Accordingly, the uncontroverted facts demonstrate Agency's

breach of contract liability and entitle J. Scaduto to a judgment as a matter of law.[1]  Further,

---

[1] Agency's pleadings dispute the proper measure of damages to which J. Scaduto is entitled. While Agency does not dispute that it received invoices prior to J. Scaduto's termination, the proper amount chargeable in such invoices has been called into question. Nonetheless, while the amount of damages owed by Agency is subject to proof, such dispute presents no obstacle to this Court adjudging Agency liable for breach of contract and definitively obligated to pay whatever such damages may be shown. Similarly, any factual disputes and defenses raised by defendant Liberty Mutual's answer as surety do not address the underlying liability of its principal Agency. Such claims speak only to the extent and applicability of Liberty Mutual's surety obligations to J. Scaduto. Regarding the underlying contract liability, Liberty Mutual is bound by the factual allegations of its principal Agency and, in any case, pleads that it is without knowledge to validly contest Agency's admissions.

Defendant Agency's counterclaims must be dismissed because the undisputed facts supporting

such counterclaims both fail to state a claim upon which relief can be granted and are legally

deficient.

Uncontested Facts Established By the Pleadings

The allegations of J. Scaduto's First Amended Complaint, taken together with the

responses found in Agency's Verified Answer and Counterclaims, establish the following

uncontested facts necessitating the grant of J. Scaduto's motion:[2]

In or around September of 2006, Agency, as general contractor, entered into a Prime

Contract with the United States Postal Service (the "Post Office") for certain construction work

to be performed at the Mott Haven Post Office Facility (the "Project"). *See* Am. Compl. at ¶ 7,

ex. a; Ans. at ¶ 7.[3]  Defendant Liberty Mutual Insurance Company ("Liberty Mutual") issued a

Miller Act payment bond on the Project as surety for defendant Agency. *See* Am. Compl. at ¶ 8;

Ans. at ¶ 8; Lib. Ans. at ¶ 8.

On or about September 28, 2006, J. Scaduto entered into a Subcontract Agreement with

Agency for certain roofing work to be performed at the Project. *See* Am. Compl. at ¶ 9, ex. b;

---

[2] Reference to Plaintiff J. Scaduto's First Amended Complaint and Defendant Agency's Verified
Answer & Counterclaims, both attached to the Declaration of Paul A. Montuori, Esq. (the
"Montuori Declaration") sworn to on June 27, 2008, are cited respectively herein as "Am.
Compl. at___," and "Ans. at___." The uncontested facts are established by the pleadings of the
contracting parties, J. Scaduto and Agency. Defendant Liberty Mutual's answer does not cast
any doubt as to the established facts. Liberty Mutual's answer, also attached to the Montuori
Declaration, is cited herein as "Lib. Ans.___at."

[3] The pleadings do not create a dispute concerning the accuracy of the documents appended to
and made part of J. Scaduto's First Amended Complaint. In fact, Agency believes that this Court
can establish the "true and complete meaning, content, and intent" of these documents by
reference to their inclusion in J. Scaduto's First Amended Complaint. Ans. at ¶¶ 7, 8, 13, 16, 26.

Ans. at ¶ 9. The Subcontract Agreement governs the rights and obligations between the parties.
*See id.*

Pursuant to the Subcontract Agreement, Agency had the right to terminate J.
Scaduto's work for either subcontractor default ("termination for cause"), or at Agency's
convenience ("termination for convenience"). *See* Am. Compl. at ¶ 9, ex. b; Ans. at ¶ 9.[4] The
termination for cause section of the Subcontract Agreement, contained in Paragraph Seventeenth
and labeled "Performance Agreement," gives the contractor the ability to take over the Project,
and deduct its remediation costs from the balance owed subcontractor:

> [s]hould subcontractor at any time fail to supply a sufficient
> number of skilled workmen or a sufficient quantity of
> material of proper quality[,] [o]r fail in any respect to
> prosecute the work covered by the subcontract with
> promptness and diligence[,] [o]r fail in the performance of
> any of the agreements herein contained.

Am. Compl. at ex. b (p. 4, ¶ 17). Under the explicit terms of the Subcontract Agreement, a
termination for cause must be accompanied by, and is only affective "after twenty-four (24)
hours written notice to the Subcontractor." *See id.*

On or about May 22, 2007, Agency sent J. Scaduto a facsimile (the "May 22 Fax")

---

[4] Agency's right to terminate the subcontractor for convenience springs from the provision in the
Subcontract Agreement that affords Agency all rights in relationship to the subcontractor as
possessed under the Prime Contract. *See* Am. Compl. at ¶ 9, ex. b; Ans. ¶ 9. The Prime
Contract contains a standard termination for convenience provision stating that:

> [p]performance under this Contract may be terminated by
> the [Contracting Officer] in whole or in part whenever the
> Contracting Officer determines that termination is in the
> interest of [the Contracting Officer]. A termination may be
> effected by delivery to the supplier of a notice of
> termination specifying the extent of the work terminated,
> and the effective date of the termination.

*See* Am. Compl. at ¶ 7; ex. a (p. 31, ¶ B.1101(a)); Ans. at ¶ 7.

immediately terminating the Subcontract Agreement. *See* Am. Compl. at ¶ 16, ex. c; Ans. at ¶

16. The May 22 Fax stated:

> It is without Prejudice, and at the request of the Post Office that we must seek another roofer to finish the project. This was confirmed in Meeting Minutes E-Mailed Tuesday Evening (copy attached).
>
> Hopefully, the reports which are not yet in from the NY Fire Department, the investigator from 5/15/07 who went to the site, and our Insurance company investigator, will exonerate us all.[5]

Am. Compl. at ex. c.

The May 22 Fax contained no reference to any default on J. Scaduto's part, only that

Agency was obliging the request of the United States Postal Service. *See* Am. Compl. at ¶ 16,

ex. c; Ans. at ¶ 16. No advance notice period was provided. *See id.* The May 22 Fax was the

only notice of the termination J. Scaduto received. *See* Am. Compl. at ¶¶ 16-17; exs. c-d; Ans. at

¶¶ 16-17.

The termination was effective as to J. Scaduto at the time of the May 22 Fax. *See* Am.

Compl. at ¶ 16; ex. c; Ans. at ¶ 16. Agency, in reality, had decided to terminate J. Scaduto four

days earlier, "as of May 18, 2007."[6] Ans. at ¶ 72; *see also* Am. Compl. at ¶ 16, ex d (¶ f).

---

[5] The second paragraph of the May 22 Fax references a fire at the Mott Haven Facility occurring on May 12, 2007. Ans. at ¶ 81. The parties are in dispute as to the cause of the fire. However, as discussed *infra*, given the clarity of the facts concerning J. Scaduto's termination, and the clear legal standards applied when a New York construction contract is terminated in such a manner, the factual contentions concerning the cause of the fire are not legally significant to the determination of J. Scaduto's motion and its rights under the Subcontract Agreement.

[6] In fact, the minutes of a contractor meeting called by the Post Office and attended by Agency and the Project architect STV Incorporated, indicate that Agency had decided to terminate J. Scaduto as of the date of that meeting, May 18, 2007, prior to even the May 22 Fax. *See* Am. Compl. at ¶ 16, ex. d (¶ f); Ans. at ¶ 16.

4

On May 18, 2007, the United States Postal Service convened a meeting (the "Post Office Meeting") with Agency. *See* Am. Compl. at ¶ 16, ex. d; Ans. at ¶ 16. The minutes of the meeting confirm that "[a]t [the Post office's] request, [Agency] is engaging the services of another roofing subcontractor…[t]he roofing subcontractor will be at the site Friday afternoon May 18th to schedule the work to be performed." Am. Compl. at ex. d (¶ f); *see* Ans. at ¶ 16. Consistent with the May 22 Fax, the Post Office Meeting minutes contain neither a specified reason for J. Scaduto's termination, nor reference to any default in subcontractor obligations. *See* Am. Compl. at ¶ 16, ex. d (¶ f); Ans. at ¶ 16.

Prior to its termination, and after the fire, J. Scaduto sent Agency correspondence indicating it was willing and able to perform its remaining subcontract obligations. *See* Am. Compl. at ¶ 26, ex. e; Ans. at ¶ 26. At the time of the termination, Agency had received open invoices from J. Scaduto in the amount of seventy eight thousand fifteen dollars ($78,015.00). *See* Am. Compl. at ¶ 13; Ans. at ¶ 13. J. Scaduto's First Amended Complaint brings causes of action seeking damages for breach of contract and violation of the Miller Act, 40 U.S.C. § 3131 *et. seq. See generally* Am. Compl. Agency has raised the affirmative defenses of: offset; payment of all sums due and owing; lack of completion of the Project; proper termination; unclean hands; and reliance on the terms of Paragraph Eleventh of the Subcontract Agreement. *See* Ans. at ¶¶ 69-75. Agency has, in turn, brought two counterclaims sounding in negligence and breach of contract/indemnity. *See* Ans. at ¶¶ 85-94.

## Standard for Granting Motion

For the Court to grant a motion under Rule 12(c) for judgment on the pleadings in favor of the plaintiff, the pleadings must show, in the light most favorable to the defendant, that the plaintiff must prevail as a matter of law. "Judgment on the pleadings is appropriate where

5

material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988). Accordingly, granting such judgment is proper if the pleadings conclusively establish all elements for which the plaintiff holds the burden, and that no defense is possible.

Regarding a motion under Rule 12(b)(6) for legal sufficiency, the Court, while accepting the plaintiff's (here the plaintiff-in-counterclaim's) allegation as true and granting all reasonable inferences, will grant the motion if the plaintiff's own allegations reveal legal shortcomings or barriers that preclude the desired relief from being granted. "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006). Accordingly, this Court may dismiss Agency's counterclaims if "it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations." *In re Tamoxifen Citrate Antitrust Litig.*, 429 F.3d 370, 384 (2d Cir. 2005), *amended by* 466 F.3d 187, 200 (2d Cir. 2006); *see generally McCarthy v. The Dunn & Bradstreet Corp.*, 482 F.3d 184 (2d Cir. 2007) (affirming grant of 12(b)(6) motion).

Argument

The Subcontract Agreement provided Defendant Agency with a menu of termination options. It freely and deliberately chose a termination for convenience. Recognizing the May 22 Fax as the sole termination notice dictates that Agency be liable for a certain measure of convenience damages. Accordingly, J. Scaduto is entitled to judgment on the pleadings because Agency has admitted the very allegations giving rise to its liability. Further, Agency pleads no viable defense that can legally countermand its liability.

6

Dismissal of Agency's counterclaims under Rule 12(b)(6) should be granted because Agency admits facts that legally negate J. Scaduto's liability on the two counterclaims, and has pled counterclaims that are legally incompatible with the uncontested facts. *See Centro Medico del Turabo, Inc. v. General Motors Corp.*, 406 F.3d 1, 6 (1st Cir. 2005); *Rodi v. Southern New England School of Law*, 389 F.3d 5, 12, 17-18 (1st Cir. 2004). Dismissal under Rule 12(b)(6) is further appropriate because Agency's Verified Answer & Counterclaims affirmatively establish defenses that negate any theoretical liability J. Scaduto may have on the two counterclaims. To prevail on its counterclaims, Agency would be forced to contradict its own allegations and admissions. *See, e.g., Moranski v. General Motors Corp.*, 433 F.3d 537, 540 (7th Cir. 2005) (Title VII plaintiff who affirmatively alleged that the employer treated everyone the same way could not prevail without contradicting his own pleadings).

The allegations in pleadings are binding admissions. *See Kaplan v. Aspen Knolls Corp.*, 290 F. Supp. 2d 335, 339 (E.D.N.Y. 2003). In its pleading, Agency has admitted that the May 22 Fax is the exclusive document constituting the sole termination notice. *See* Ans. at ¶¶ 16-17. As such, because Agency chose to issue the termination by way of the May 22 Fax, it is obligated to pay damages for a convenience termination. Moreover, Agency forfeited its ability to seek any damages from J. Scaduto. The only question remaining after the May 22 Fax was how much damages Agency would be required to pay.

J. Scaduto recognizes that the unambiguous language of the May 22 Fax can be classified in only one manner – a termination for convenience. If such is not the case, then Agency would be liable for damages resulting from a wrongful termination for cause because specifically required contract provisions were not followed in executing the termination. In

7

either case, no rendition of the assented to facts can cause Agency to escape breach of contract liability. Judgment on the pleadings is therefore appropriate.

I.      The Pleadings Establish Agency's Liability for Breach of Contract

The Subcontract Agreement, consistent with the majority of New York construction contracts, provided the general contractor Agency with the ability to terminate the subcontractor J. Scaduto for either, 1) cause (subcontractor default); or 2) convenience. Explicit contractual procedures are established for declaring each such default. The rights and obligations between parties become fixed and established at the time a particular termination is declared. As the cases referenced below make clear, a contracting party, such as Agency, may not declare a termination for convenience and later seek to reclassify the termination because it thereafter finds itself in a disadvantageous position. If the opposite were true, a contracting party would have an unfettered ability to declare a termination for cause whenever it seemed suitable. Freely negotiated, unambiguous contract provisions, intended to benefit and protect both parties, would be eviscerated.

A termination for convenience "may be defined as the quality of being personally convenient or 'suitable or well adapted to one's easy action or performance of functions,' or the saving of trouble." *G & R Elec. Contractors, Inc. v. State*, 130 Misc. 2d 661, 663, 496 N.Y.S.2d 898, 900 (Ct. Cl. 1985) (quoting *The Compact Edition of the Oxford English Dictionary* 934-35 (Jan. 1984)). A party's motive for invoking a termination for convenience clause is not significant.[7] *See generally Desco Vitro Glaze of Schenectady, Inc. v. Mechanical Const. Corp.*, 159 A.D.2d 760, 552 N.Y.S.2d 185 (3d Dep't 1990) (one contract terminated and substituted for

---

[7] Federal contracts containing termination for convenience clauses are subject to the requirement of good faith. In *Torncello v. U.S.*, 681 F.2d 756 (Ct. Cl. 1982), the Court of Claims held that an unrestricted right of termination clause would make a contract illusory for lack of consideration.

8

another encompassing essentially the same services and materials). Here, J. Scaduto respectfully asserts that the pleadings conclusively establish a termination for convenience, for which damages are due.[8]

The parties agree that the May 22 Fax was the operative document constituting the termination. *See* Am. Compl. at ¶ 16, ex. c; Ans. at ¶ 16. Agency's pleading confirms that this fax was the only notice that J. Scaduto received regarding the termination. *See* Am. Compl. at ¶ 17; Ans. at ¶ 17. As such, this Court need only analyze the contents of this document to determine the type of termination invoked by Agency, and the corresponding rights J. Scaduto possesses as a result of the termination. *See Transformational Strategies Consulting, Inc. (TSCI)* v. *ACS State Healthcare, LLC*, 526 F. Supp. 2d 66, 73 n. 7 (D.C. 2007) (applying New York law) (terminating party's failure to provide any "*written* notification" for cause entitled plaintiff to judgment for convenience damages consisting of balance on its invoice) (emphasis in original). The inescapable conclusion is that Agency has breached the contract by failing to pay J. Scaduto, at the least, the amount of its last invoices.

---

[8] Under New York law, the longstanding measure of damages for a convenience clause termination is:

    a) the cost actually incurred up to the effective date of such termination; plus
    b) the cost of settling and paying claims arising out of the termination of work under subcontractors or orders; and
    c) the rate of profit and overhead on (a) and (b) as prescribed by the contract.

*See G & R Elec.*, 130 Misc. 2d at 663, 496 N.Y.S.2d at 900. The Subcontract Agreement, by virtue of the Prime Contract, is in accord with this formulation. *See* Am. Compl. at ex. a (p. 31, ¶ B.1101(a)), ex. b. (p. 2, ¶ 1).

a. The May 22 Fax Establishes Agency's Breach of Contract Liability For
   Failure to Pay J. Scaduto Its Termination for Convenience Damages

The May 22 Fax is a clear, unequivocal exercise of Agency's right to terminate

J. Scaduto for convenience. Agency does not dispute that the May 22 Fax constituted the only

termination notice given to J. Scaduto – nor can it. By choosing to utilize the May 22 Fax as the

sole mechanism by which the termination was accomplished, convenience was established.

Therefore, because Agency invoked its privilege of terminating J. Scaduto for convenience,

Agency is obligated to pay J. Scaduto the proper measure of damages.

Plainly stated in the May 22 Fax, and confirmed in both the Post Office Meeting

minutes and the pleadings, is that Agency instituted termination at "the direction of the United

States Post Office."[9] Ans. at ¶ 16. Neither subcontractor default, nor any other substantive

contract obligation, was enumerated in the May 22 Fax. No specific contract section was cited

for a default. The plain meaning of the May 22 Fax reveals a convenience termination.

The "plain meaning" approach to construing the terms of a document is the well

established law of the circuit. *See Roberts v. Consolidated Rail Corp.*, 893 F.2d 21, 24 (2d. Cir.

1989); *see also O'Neil v. Ret. Plan for Salaried Employees of RKO Gen., Inc.*, 37 F.3d 55, 58-59

(2d Cir. 1994) (holding that the question of "[w]hether contract language is ambiguous . . . is

resolved by reference to the contract alone") (internal quotation marks omitted); *Accord*

*Collins v. Harrison-Bode*, 303 F.3d 429, 433 (2d Cir. 2002) (noting that "[u]nder New York law,

the question of ambiguity *vel non* must be determined from the face of the agreement, without

---

[9] Certainly, given the time sequence of how the termination unfolded, Agency cannot in good
faith put forth that such termination was a product of some exigent circumstance. The fire took
place on May 12, 2007, the Post Office Meeting took place six days later on May 18, 2007, and
the sole termination notice was given four days later, and ten days after the fire, on May 22,
2007.

reference to extrinsic evidence").[10]  Undeniably, the "Four Corners" of the May 22 Fax plainly

illustrate J. Scaduto's termination for convenience, making judgment on such basis appropriate.

*See Duse v. Int'l Bus. Machs. Corp.*, 252 F.3d 151, 158 (2d Cir. 2001) ("Where the language of

the contract is clear and unambiguous, the contract is to be given effect according to its terms

and those terms may be the basis for [a] judgment").

A termination for convenience is solidified by the plain content of the May 22 Fax.

Agency availed itself of the broad termination for convenience clause by voluntarily obliging

and acquiescing to the request of the United States Post Office. *See* Ans. at ¶ 16.  Agency's

pleading does not attempt to dispute this notion because the straightforward language of the May

22 Fax can permit no other logical conclusion. *See Bank Julius Baer & Co. v. Waxfield Ltd.*, 424

F.3d 278, 283 (2d Cir. 2005) (observing that "canons of construction" forbid contractual

interpretations that "lead to absurd results").

Merely appeasing the request of a project owner (the Post Office) is not grounds to

declare a subcontractor in default.  Given such, the May 22 Fax unmistakably lacks the substance

of a termination for cause notice. *Cf. MCK Building Assoc. v. St. Lawrence*, 301 A.D.2d 726,

728, 754 N.Y.S.2d 397, 397 (3d Dept. 2003) (default termination notice cited "lack of job

performance," "disregard of contractual obligations," and "specifically stated that it was

terminating the contract pursuant to provisions of one of the contract documents").  A

termination for cause notice is characterized by its declaration of the specific contractual

---

[10] The "plain meaning" approach is applied generally to documents that dictate the rights and
obligation between parties. *See, e.g.*, *United States v. Broad. Music, Inc.*, 275 F.3d 168, 175 (2d
Cir. 2001)  (holding that when the language of a consent decree is unambiguous, its scope is
discerned by looking at the "four corners" of the document).

shortcoming, provided to the contractor in advance of the termination taking effect.[11]  *See*

*generally Midtown Contracting Corp. v. Goldsticker*, 165 A.D. 264, 150 N.Y.S. 809 (1st Dept.

1914).  Declaring a termination for cause is a "drastic sanction," for which a party is held strictly

accountable, and "is imposed (or sustained) only for good grounds and on solid evidence."

*Lisbon Contractors Inc., v. United States,* 828 F.2d 759, 765 (Fed Cir. 1987) (citing *J.D. Hedin*

*Constr. Co. v. United States*, 187 Ct. Cl. 45, 408 F.2d 424, 431 (1969); *Schlesinger v. United*

*States*, 182 Ct. Cl. 571, 390 F.2d 702, 709 (1968)).  Without hesitation, therefore, courts treat a

termination notice as one for convenience when it does not specifically recite the particular

contractor default, or strictly comply with contractual notice provisions.[12]  For example, in *Rice*

*Systems, Inc. v. U.S.*, 62 Fed.Cl. 608, 620 n. 14 (2004), the Court of Federal Claims found that a

termination was one for convenience, even when the notice did not explicitly state so, because

the notice made no attempt to terminate the contract for cause.  *See also TSCI*, 526 F. Supp. 2d at

73 n. 7 (written notice of termination found to be paramount).  Likewise, the May 22 Fax makes

no such attempt.

---

[11] Utilizing a termination for convenience is a matter of choice.  A convenience termination can take place even if grounds may exist for terminating a contract for cause.  *See Tishman Constr., Inc. v. City of New* York, 228 A.D.2d 292, 292-93, 643 N.Y.S.2d 589, 590 (1st Dept. 1996) (commenting that convenience termination may take place "with or without cause").

[12] This principle has engendered the long standing judicially created doctrine of "constructive termination for convenience" involving government contracts.  *See Linan-Faye Constr. Co. v. Housing Auth. of the City of Camden*, 49 F.3d 915, 923 (3d Cir. 1995).  Courts recognize that, under this doctrine, it is irrelevant that the contracting officer does not expressly invoke the right of termination for convenience in the termination notice.  *See Rice Systems, Inc. v. U.S.*, 62 Fed.Cl. 608, 619 (2004).  Undoubtedly, this doctrine was borne out of the recognition that the clause affording the right to terminate for convenience, when included in a contract, is a broad one.  It is a party such as Agency that would, in the normal course, seek to take advantage of this doctrine and classify the May 22 Fax as a termination for convenience in order to insulate itself from liability for a potential wrongful termination.

Significant is that the May 22 Fax comports to the contract specifications for issuing a termination for convenience, while failing to reference the mandated language for a termination for cause. The Prime Contract states that a cause termination is accomplished through "written notice of default." Am. Compl. at ex. a (p. 32, ¶ B.1102(a)(1)). Similarly, the Subcontract Agreement requires that a default for performance may be declared only after "twenty-four (24) hours written notice to the subcontractor." *Id.* at ex. b (p. 4, ¶ 17). Conversely, the Prime Contract's termination for convenience clause states that the writing evidencing this variety of termination need only contain notice "specifying the extent of the work terminated, and the effective date of the termination." *Id.* at ex. a (p. 31, ¶ B.1101(a)). Such is precisely the type of notice Agency provided in the May 22 Fax.

Regarding the fire, the May 22 Fax references Agency's lack of knowledge as to how such occurrence began, including whether Agency itself may somehow be at fault. No mention of J. Scaduto's default related to the fire, or otherwise, is contained in either the May 22 Fax, or the Post Office Meeting minutes. To the contrary, the May 22 Fax expresses Agency's hope that J. Scaduto (and itself) would be exonerated from any involvement in causing the fire. For Agency to now seek damages from J. Scaduto, and refuse to pay convenience damages, is both disingenuous and a revision of its prior sentiments. The law does not provide for a "constructive termination for default," allowing Agency to somehow point to subcontractor default after a prior termination for convenience, thus avoiding liability and regaining the ability to seek damages.[13]

---

[13] If, prior to the May 22 Fax, Agency had the belief that J. Scaduto defaulted in starting the fire, it could have declared a termination for such default and, if later proven to be a wrongful termination, sought protection from the Prime Contract's clause limiting damages for a wrongful termination for cause to damages for a termination for convenience. *See* Am. Compl. at ex A (p. 81, ¶ g). Agency did not even select this avenue from its menu of termination options, further evidencing that its current position is simply a fruitless quest to recoup its expenses and not a reflection of the established facts.

Also notable in the convenience determination is that the May 22 Fax did not provide the required 24 hour notice period for a proper termination for cause. In virtually every construction case, a termination for cause would, and in fact must, provide such notice.[14] Rather, the May 22 Fax was a classic example of a contractor terminating a subcontractor at will, and immediately, because it was more convenient to do so for the Project to continue.

b. Any Contrary Reading of the May 22 Fax Also Establishes Agency's Liability for Breach of Contract

If assuming, *arguendo*, the plain language of the May 22 Fax somehow did not constitute a termination for convenience, it must necessarily constitute an attempt at a termination for cause. Such a finding is of no avail in negating Agency's liability for breach of the Subcontract Agreement. In fact, it exposes Agency to an even greater measure of damages.[15]

First, Agency's pleading, consistent with the language it acknowledges is contained in the May 22 Fax, does not allege that the termination was one for subcontractor default.

---

[14] Nowhere in the relevant paragraph of the Subcontractor Agreement (Paragraph Seventeenth) is the subcontractor's ability to cure the default mentioned. *See* Am. Compl. at ex. b (p. 4 ¶ 17). Providing the subcontractor with the opportunity to "cure" a default is of no relevance to the "24 Hour notice period requirement" embedded in this agreement. Antecedently, the alleged inability of a subcontractor to cure an alleged default does not excuse providing the notice. Under the Subcontract Agreement, J. Scaduto may have been able to rectify any alleged default within this period, and a termination for cause could still have been rightfully declared. Rather, providing the 24 hour notice is simply a condition precedent before a proper termination for cause can be legally established. *See MCK Building Assoc.*, 301 A.D.2d at 728, 754 N.Y.S.2d at 397 (termination affective on day of notice held wrongful where ten (10) days prior notice required).

[15] The wrongfully terminated contractor may be entitled to its present and future lost profits, value of work done to date, and start up expenses. *See generally Peru Associates, Inc. v. State*, 70 Misc. 2d 775, 334 N.Y.S.2d 772 (Ct. Cl. 1971), *judgment aff'd*, 39 A.D.2d 1018, 335 N.Y.S.2d 373 (3d Dept. 1972). Should the Court deny the present motion, J. Scaduto will further pursue a wrongful termination claim, the only legally plausible alternative to a termination for convenience.

Rather, it states by way of affirmative defense only that the termination was "proper."[16] Ans. at ¶ 72. The notion that the termination was one for cause – and therefore excuses Agency from paying any sum that is offset by J. Scaduto's default – was created by Defendant Liberty Mutual in denying J. Scaduto's surety bond claim. It was Liberty Mutual that first conveyed this sentiment to J. Scaduto in correspondences incorporated by reference in the First Amended Complaint.[17] *See* Am. Compl. at ¶¶ 62, 64.

In this matter, reliance on a termination for cause theory exposes Agency to liability for breach of contract because under New York law "[w]here the contract specifies conditions precedent to the right of cancellation, the conditions must be complied with." *Consumers Power Co. v. Nuclear Fuel Servs., Inc.*, 509 F. Supp. 201, 211 (W.D.N.Y. 1981); *see also Filmline (Cross-Country) Prods., Inc. v. United Artists Corp.*, 865 F.2d 513, 518-19 (2d. Cir. 1989) (affirming finding of breach upon failure to terminate contract in accordance with notice provision); *General Supply & Constr. Co. v. Goelet*, 241 N.Y. 28, 34, 148 N.E. 778, 779 ("The termination of the contract in this case without the required previous notice…in accordance with the terms of the contract was wrongful."), *remittitur amended*, 241 N.Y. 507, 150 N.E. 532

---

[16] As discussed more fully in the treatment of Agency's affirmative defenses, *infra*, J. Scaduto does not contest that the termination for convenience set forth in the May 22 Fax was not proper, or that Agency did not have authority under the Subcontract Agreement to invoke such termination. Rather, Agency has breached the Subcontract Agreement by failing to pay J. Scaduto the proper measure of damages resulting from such termination for convenience.

[17] The fact that defendant Liberty Mutual takes such a stance, opposite that of even its own principal Agency and in clear contravention of the plain facts of the termination, establishes Liberty Mutual's bad faith, as alleged in count seven of plaintiff's First Amended Complaint. *See* Am. Compl. at ¶¶ 58-68. Such untenable position can only result from Liberty Mutual's desire to avoid payment on its Miller Act bond obligations. Indeed, defendant Liberty Mutual's position has engendered the very need for the present litigation. Had Liberty Mutual simply acknowledged the readily apparent facts surrounding the termination - as its principal Agency has - it should have paid J. Scaduto the termination for convenience measure of damages and this Court would not be unduly burdened with passing on the clear facts of the instant matter.

15

(1925). Undeniably, and opposite defendant Liberty Mutual's willfully blind assertions, Am. Compl. at ¶¶ 58-68, the May 22 Fax did not provide any prior notice of the termination, let alone the required 24 hour notice provision explicitly required by the Subcontract Agreement for an effective default termination. To the contrary, the May 22 Fax was an after the fact notice. Agency formed its decision to terminate the Subcontract Agreement several days earlier at the Post Office Meeting. The pleadings show that the express requirements established by the Subcontract Agreement for a valid termination for cause were not followed. Any adherence to a theory that the contract was somehow validly terminated on account of a subcontractor default defies the pleadings, well-established law, and common sense. Defendant Liberty Mutual's fruitless assertions only expose Agency to potentially greater damages on account of a wrongful termination. *See MCK Building Assoc.*, 301 A.D.2d at 728, 754 N.Y.S.2d at 397. Such stance, unraveled by established facts, does not preclude a grant of judgment on the pleadings in favor of plaintiff.

      c. Agency's Affirmative Defenses are Factually and Legally Insufficient to Prevent Judgment on the Pleadings for J. Scaduto

      Agency's affirmative defenses are no impediment to the grant of Plaintiff's Rule 12 (c) motion because they both contradict Agency's own acknowledgment of the facts surrounding the termination and are not legally cognizable.[18]  To succeed, Agency's affirmative

---

[18] Likewise, and as a matter of law, each of Liberty Mutual's defenses are wound up in the same operative facts as alleged by its principal Agency and offer no valid defense to the present motion. *See* Lib. Ans. at ¶¶ 69-76; *see generally Walcutt v. Clevite Corp.* 13 N.Y.2d 48, 241 N.Y.S.2d. 834 (1963); *Ettlinger v. National Surety Co.*, 221 N.Y. 467, 117 N.E. 945 (1917). Liberty Mutual's answer, disingenuously, states throughout that it lacks knowledge or information sufficient to form a belief as to certain controlling facts regarding the termination that Agency has admitted in its pleading. *See generally* Lib. Ans. Accordingly, Liberty Mutual cannot contradict the facts established by the contracting parties. Any remaining disputes raised by Liberty Mutual's pleading can relate only to the discharge of its bonding *(Continued...)*

defenses would have to specifically and deliberately disavow facts that it has already acknowledged are true.  As a matter of law, Agency cannot both acknowledge the existence of the May 22 Fax, Ans. at ¶ 16, 17, admit that J. Scaduto was terminated "at the direction of the United States Post Office," Ans. ¶16, admit that the fax "was the only termination notice given to J. Scaduto," Ans. at ¶ 17, and at the same time somehow maintain its affirmative defenses.

Agency fails to consider the legal significance of the termination for convenience.  To the extent the termination is classified as one of convenience, J. Scaduto agrees with Agency's affirmative defense stating that the termination was proper.  *See* Ans. at ¶ 72.  Agency had the ability to terminate the Subcontract Agreement for convenience, as the substance of the May 22 Fax conveys.  However, exercising the right to terminate the contract for convenience brings with it an obligation to compensate the terminated subcontractor in accordance with a set measure of damages.  It is Agency's failure in this regard that creates its unassailable liability for breach of the Subcontract Agreement.  Agency cannot fall back on the defense that the Subcontract Agreement was properly terminated because such defense fails to take into account the true issue - Agency's liability for failure to pay J. Scaduto after a proper termination for convenience was declared.

Agency's reliance on an inchoate right to offset is also unavailing.  *See* Ans. at ¶ 69  New York law is explicit in support of the proposition that once a termination for convenience is established, the terminating party cannot seek to recover damages it may have incurred on account of the terminated subcontractor.  *See Tishman Constr., Inc. v. City of New* York, 228

---

obligations, J. Scaduto's ability to make a claim against the bond, the amount of damages chargeable, and Liberty Mutual's bad faith, not Agency's unquestionable contract liability.

A.D.2d 292, 292-93; 643 N.Y.S.2d 589, 590 (1st Dept. 1996).[19]   As such, Agency's decision to

terminate J. Scaduto for convenience, as reflected in the May 22 Fax, precludes any offset

defense.

Relying on Paragraph Eleventh of the Subcontract Agreement as a defense similarly

lacks merit. "Where the language of the contract is clear and unambiguous, the contract is to be

given effect according to its terms." *Duse*, 252 F.3d at 158.

The unambiguous language of Paragraph Eleventh – which must be given effect –

states:

> The Sub-contractor shall protect and indemnify the said
> Contractor against any loss or damage suffered by any one
> [sic] arising through the negligence of the Sub-Contractor, or
> those employed by him or his agent or servants; he shall bear
> any expense which the Contractor may have by reason
> thereof, or on account of being charged therewith; and if
> there are any such injuries to persons or property unsettled
> for, *when the work herein provided for is finished*, final
> settlement between the Contractor and Sub-Contractor shall
> be deferred until such claims are adjusted or suitable special
> indemnity acceptable to the Contractor is provided by the
> sub-contractor.

Am. Compl. at ex. b (p. 4, ¶ 11) (emphasis added).   According to these terms, the financial

accounting between the parties that Agency believes offers it a defense is applicable only *after*

work on the Project has been completed.   Under the facts of these circumstances, J. Scaduto's

work on the Project was clearly not complete; else a termination would not have been rendered

in the first place.   Agency itself alleges that J. Scaduto's work was not complete.   *See* Ans. at ¶

---

[19] As discussed *infra,* following the rule set forth in *Tishman Constr.* requires dismissal of
Agency's breach of contract/indemnity counterclaim.   Establishment of the termination for
convenience is the event that forestalls Agency's ability to bring such a counterclaim.   Even if,
*arguendo*, another part of the Subcontract Agreement allowed Agency to avoid a monetary
payout – which it cannot under *Tishman Constr.* – the fact remains that a termination for
convenience occurred, and Agency thereby forfeited the right to bring such a counterclaim.

71. Paragraph Eleventh is, therefore, inapplicable on its face and in no way bears on the fact a termination for convenience occurred, for which damages are owed.

Primarily, the language of Paragraph Eleventh is in accord with the dictates of *Tishman Constr.* There, the court emphatically stated that a party's obligation to pay damages resulting from a termination for convenience cannot be co-opted by reliance on another contract section that reserves the party's right to recoup damages. *See Tishman Constr.*, 228 A.D.2d at 292-93, 643 N.Y.S.2d at 590. Such proposition is logical given the standard measure of contract construction.

Each section of a contract must be read in a way that gives every other section meaning. *See United States v. IBT*, 970 F.2d 1132, 1136 (2d Cir. 1992) (stating that courts should attempt to read all contract language in a way that no language is rendered superfluous). If Paragraph Eleventh offered the defense Agency claims, the entire notion of a convenience termination would be made superfluous. The established measure of damages for a termination for convenience would be rendered meaningless by virtue of another contract provision. Recognizing these perils, Paragraph Eleventh specifically establishes that the financial settlement between the parties occurs only after the work is complete, when termination damages are necessarily not implicated. This process respects the integrity of the contract, and the principles found in *Tishman Constr.*

Agency next asserts the affirmative defense of unclean hands. The defense of "[u]nclean hands is an equitable defense to equitable claims." *Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 607 (2d Cir. 2005); *See, e.g., Gala Jewelry Inc., v. Harring*, 2006 WL3734202 at *2 n.3 (S.D.N.Y. Dec. 18, 2006) (Lynch, J.) (recognizing that action at law "categorically" defeats defendant's unclean hands defense, and striking the defense in such

action); *In re Gulf Oil/Cities Service Tender Litigation,*725 F. Supp. 712, 742 (S.D.N.Y. 1989) (defense of unclean hands is "unavailable in a contract action for damages"). Because J. Scaduto seeks damages in an action at law, Agency cannot avail itself of unclean hands as a defense.

Lastly, Agency believes that "Plaintiff's claims are barred by reason of payment of all sums due and owing pursuant to work, labor and services provided at the Mott Haven Project," Ans. at ¶ 70, and "Plaintiff's claims are barred in whole or in part by reason of not having completed the work at the Mott Haven Project," Ans. at ¶ 71. Neither defense alters Agency's liability stemming from the termination for convenience.[20] The first of these defenses speaks to the proper amount owed J. Scaduto for work that was completed on the Project prior to the termination. This issue is reserved for the calculation of damages, not the liability determination the pleadings establish. Additionally, the May 22 Fax does not recite J. Scaduto's lack of work completion as grounds for the termination.[21] Moreover, stating that J. Scaduto's failure to complete the work offers a defense to Agency's liability is nothing more than a truism. J. Scaduto's alleged lack of completion was a result of it being terminated by Agency. Agency received correspondences that J. Scaduto was prepared to work. *See* Am. Compl. at ¶ 26, ex. e; Ans. at ¶ 26. Rationally, Agency cannot use the lack of work mandated by its termination

---

[20] Defendant Liberty Mutual's styling of these defenses states that J. Scaduto waived its claim by falling to meet certain conditions precedent. *See* Lib. Ans. at ¶ 71. In addition to suffering from the same factual infirmities as its principal Agency's defenses, Liberty Mutual's "condition precedent" rendition is facially deficient because of its failure to plead such defense with the required specificity and particularity the Federal Rules demand. *See* Fed. R. Civ. P. 9(c); *Smith v. Wal-Mart Stores*, 2006 WL 27111468 at *7 (N.D. Cal. September 20, 2006) (defendant's challenge to conditions precedent was not sufficiently specific, and therefore struck). Inability causes this deficiency.

[21] If such defense is directed to the amount J. Scaduto claims was owed prior to the termination, this stance, once again, speaks to the issue of the proper measure of damages and not the threshold liability for termination for convenience that is the subject of the present motion.

command as justification for the initial termination.  No hurdle exists to the grant of plaintiff's

Rule 12(c) Motion.

II.      Agency's Counterclaims are Legally Insufficient and Should be Dismissed

         In order to maintain its counterclaims, Agency would have to: i) contradict its

acknowledgment that the termination took place on May 18, 2007; ii) deny the existence of the

May 22 Fax; and iii) change its position that the May 22 Fax was the sole communication

regarding the termination.  If its negligence counterclaim is to be maintained, Agency would

further have to disavow the very Subcontract Agreement it entered into with J. Scaduto.  These

facts cannot, however, be contradicted in good faith, and in accordance with Federal Rule of

Civil Procedure 11, because they are unambiguous and create a conclusion that is unmistakable.

The result is that Agency's counterclaims must be dismissed.  *See Matusovsky v. Merrill Lynch*,

186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002) (stating that if a plaintiff's allegations are contradicted

by a document considered in determining a Rule 12(b)(6) motion, those allegations are

insufficient to defeat the motion); *Rapoport v. Asia Elecs.*, 88 F. Supp. 2d 179, 184 (S.D.N.Y.

2000) (holding that when documents contain statements that contradict the allegations in the

complaint, the documents control and the court need not accept as true the allegations contained

in the complaint).

         a.   The Existence of a Termination for Convenience Precludes Agency's Advancement
              of a Breach of Contract/Indemnity Claim Against J. Scaduto

              Following the path of an at will termination for convenience necessarily, and

logically, limits the terminating party's ability to later seek redress from the party it terminated.

Therefore,

                        termination of plaintiff's services under [the termination for
                        convenience clause] of the agreement precludes [Agency]
                        from raising its counterclaims under the [Subcontract]

                                        21

> Agreement.    Had [Agency] wished to pursue these claims,
> [J. Scaduto] should have been terminated under [the
> termination for default clause] of the agreement, which
> provides for recouping the expense of curing plaintiff's
> default. Where [a party] elects to terminate for convenience...
> whether with or without cause, it cannot counterclaim for the
> cost of curing any alleged default.

*Tishman Constr.*, 228 A.D.2d at 292-93, 643 N.Y.S.2d at 590; *See also Paragon Restoration*

*Group, Inc. v. Cambridge*, 42 A.D.3d 905, 906, 839 N.Y.S. 2d 658, 660 (4th Dept. 2007)

(convenience termination, with or without cause, precludes counterclaim seeking damages for

the cost of curing alleged default); *Fruin-Colnon Corp. v. Niagara Frontier Transp. Auth.*, 180

A.D.2d 222, 233, 585 N.Y.S.2d 248, 255  (4th Dept. 1992) (because termination is one for

convenience, "defendant is not entitled to reimbursement for payments it made to third parties

hired to carry out remedial [work]").   The termination method Agency has chosen is precisely

that chosen by defendant New York City in *Tishman Constr.*  The result here can be no different.

Agency had the ability to terminate J. Scaduto for cause.  It voluntarily chose to use its

termination for convenience rights.  As *Tishman Constr.* reinforces, simply because the

contractor may subsequently think it originally had grounds for default, does not mean that a

breach of contract counterclaim is viable when a termination for convenience is first elected.  *See*

228 A.D.2d at 293, 643 N.Y.S.2d at 590.

b. Agency's Acknowledgment of Its Express Contract with J. Scaduto Requires
   Dismissal of its Negligence Counterclaim

Agency's negligence counterclaim is incompatible with its breach of

contract/indemnity claim.  Courts follow the,

> well-established principle that a simple breach of
> contract is not to be considered a tort unless a legal duty
> independent of the contract itself has been violated. This
> legal duty must spring from circumstances extraneous to,
> and not constituting elements of, the contract.

22

*Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 389, 521 N.Y.S.2d 653, 656 (1987) (citations omitted). "An independent tort action is not cognizable where there is no duty owed to the plaintiff other than the duty arising out of the contract itself." *Int'l Minerals and Mining Corp. v. Citicorp N. Am., Inc.*, 736 F. Supp. 587, 596 (D.N.J. 1990).

Agency's negligence claim is predicated on none other than the terms of the Subcontract Agreement. Agency contends that J. Scaduto violated some reasonably prudent standard of care when performing its work under the Subcontract Agreement. Yet, J. Scaduto was required to follow such standards in the ordinary course under its Subcontract Agreement. *See, e.g., Dalton v. Educational Testing Serv.*, 87 N.Y.2d 384, 389, 639 N.Y.S.2d 977, 989 (1995) ("[e]ncompassed with the implied obligation of each promisor to exercise good faith are 'any promises which a reasonable person in the position of the promisee would be justified in understanding were included'") (internal citations omitted).

The duty to diligently prosecute the work is both an express and implied subcontract obligation. *See generally* Am. Compl. at ex. b; *Stiver v. Good & Fair Carting & Moving, Inc.*, 32 A.D. 3d 1209, 1210, 822 N.Y.S.2d 178, 180 (4th Dept. 2006) ("[a]ny duty of defendant to plaintiffs in this case must arise from its contractual agreement to perform the [work] because it had no preexisting duty imposed by law to [perform such work]"). In the absence of the Subcontract Agreement, J. Scaduto would have no duty to Agency, or the protection of Agency's interests.[22] *See De Kwiatkowski v. Bear, Stearns & Co.*, 306 F.3d 1293, 1306 (2d Cir. 2002).

---

[22] The duty giving rise to a tort action is based in the existence of a special fiduciary relationship between parties and not the everyday, garden variety commercial contractor-subcontractor agreement present here. *See, e.g., Fourth Branch Assoc. Mechanicville v. Niagara Mohawk Pr. Corp.*, 235 A.D.2d 962, 963, 653 N.Y.S.2d 412, 415 (3d Dept. 1997) (fiduciary relationship giving rise to tort claim not present where parties' relationship grew out of commercial contract).

Agency pleads no facts that give rise to any special or extra-contractual duty. *See* Ans. at ¶¶ 79-89. Therefore, because J. Scaduto owes Agency no duty in the absence of the Subcontract Agreement, the negligence counterclaim must be dismissed. The counterclaim violates the "general rule that breach of contract does not, by itself, give rise to a tort action." *Ivan Mogull Music Corp. v. Madison-59th Street Corp.*, 162 A.D.2d 336, 337, 556 N.Y.S.2d 906, 907 (1st Dep't 1990).

Conclusion

Based on the foregoing reasons, and foregoing authorities, plaintiff J. Scaduto respectfully asks this Court to grant its motion under Rule 12(c) for judgment on the pleadings as to defendant Agency's liability, dismiss defendant Agency's Counterclaims for legal insufficiency, and grant any further relief this Court deems just and proper.

**THE LAW OFFICES OF PAUL A. MONTUORI, P.C.**

/s/ Paul A. Montuori
By: Paul A. Montuori, Esq. (PM 5787)
Attorney for Plaintiff
265 Post Ave., Suite 270
Westbury, NY 11590
(516) 338-4714

Of Counsel:

Kevin C. Palmeri, Esq. (KP 7556)
The Law Offices of Kevin C. Palmeri, LLC
2100 Deer Park Ave., Suite 3
Deer Park, NY 11729

William G. Kelly (WK 2982)
Goldberg Segalla LLP
170 Hamilton Ave., Suite 203
White Plains, NY 10601

Dated: July 7, 2008
       Westbury, NY

24