| | |
|---|---|
| THE UNITED STATES OF AMERICA<br>for the use and benefit of<br>J. SCADUTO & SON, INC., | UNITED STATES DISTRICT COURT<br>FOR THE SOUTHERN DISTRICT OF<br>NEW YORK |
| Plaintiff, | |
| v. | Civil Action No. 08CV 01885 (GEL)<br>"ECF Case" |
| LIBERTY MUTUAL INSURANCE CO.<br>And AGENCY CONSTRUCTION CORP., | Declaration in Opposition to Plaintiff's Rule 12<br>Motion |
| Defendants. | |

## **DEFENDANT's, AGENCY CONSTRUCTION CORP., MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF's, J. SCADUTO & SON, INC., RULE 12 MOTION**

DELBELLO DONNELLAN WEINGARTEN WISE & WIEDERKEHR, LLP
Evan Wiederkehr, Esq. (EW9488)
*Attorneys for Defendant Agency Construction Corp.*
One North Lexington Avenue
White Plains, New York 10601
Phone: (914) 681-0200
Facsimile: (914) 684-0288
ew@ddw-law.com

Of Counsel:

Eliot Schuman, Esq.

1255499
50000660-021

TABLE OF CONTENTS

Table of Authorities………………………………………………………...……………......ii

Preliminary Statement………………………………………………………………..………...1

Uncontested Facts Established by the Pleadings..…………………………………….……...3


Argument

I.      Agency Has Properly Pled A Cause of Action Sounding in Negligence.....................3

        A.      The Legal Standard On a Motion to Dismiss Under Rule 12(b)(6).....................3

        B.      A Termination for Convenience Does Not Relieve Scaduto of Liability.............4

        C.      Agency's Counterclaims Are Supported by an Independent Duty of Care..........11

II.     Summary Judgment As to Damages is Premature……………………………………18

Conclusion……………………………………………………………………………….19

# TABLE OF AUTHORITIES

**Cases**

AGFA Corp. v. United Mktg. Group, Inc.
No. 02 Civ 8648 (Preska, J.), 2003 WL 2155087, *2 (S.D.N.Y. Jul. 10, 2003)......................3

Allen v. Westpoint- Pepperell, Inc.
945 F.2d 40 (2d Cir. 1991)..................................................................4

Bellevue South Associates v. HRH Construction Corporation et al.
78 N.Y.2d 282(1991)........................................................................15

Brass v. Am. Film Tech., Inc.
987 F.2d 142 (2d Cir. 1993)..................................................................4

Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.
70 N.Y.2d 382 (1987)...................................................................11, 12

Dr. Reddy's Labs., Ltd. v. aiiPharma Inc.
No. 01 Civ. 10102 (Preska, J.), 2002 WL 31059289, *10 (S.D.N.Y. Sep. 13, 2002)...............3

Fruin-Colnon Corp. v. Niagra Frontier Transp. Auth.
42 A.D.3d 905 (4th Dept 2007)..................................................5, 7, 8, 9, 10

Gant v. Wallingford Bd. of Educ.
69 F.3d 669 (2d Cir. 1995)....................................................................4

Hernandez v. Coughlin
18 F.3d 133 (2d Cir.)........................................................................4

In re Motel 6
No. 93 Civ. 2183 (JFK), 200 WL 322782 *3 (S.D.N.Y Mar. 28, 2000)...............................4

Maalouf v. Salomon Smith Barney, Inc.
No. 02 Civ. 4770 (SAS), 2003 WL 1858153, *3 (S.D.N.Y Apr. 10, 2003)..........................3

New York University v. Continental Insurance Company
87 N.Y.2d 308 (1995)......................................................................12

Sommer v. Federal Signal Corporation, et al.
79 N.Y.2d 540, 583 N.Y.S.2d 957 (1992)..................................................13, 14

Tishman Construction Corporation v. City of New York
228 A.D.2d 292 (1st Dept 1996);.......................................................5, 6, 10

Tishman v. City of New York
 2002 WL 34358010 (N.Y.Sup)……………………………………………………...6, 7

Trustees of Columbia University In the City of New York v. Gwathmey Siegel
and Associates Architects, et al.
192 A.D.2d 151 (1st Dept 1993)……………………..…………………..……14, 15, 16

<u>Preliminary Statement</u>

This memorandum of law is respectfully submitted on behalf of defendant, Agency

Construction Corp. ("Agency"), in opposition to the motion of plaintiff, J. Scaduto & Son, Inc.

("Scaduto"), which seeks an Order: (i) pursuant to Rule 12(c) of the Federal Rules of Civil

Procedure granting Scaduto judgment on the pleadings as to Agency's alleged liability for

breach of contract arising out of the alleged failure to pay damages to Scaduto after Agency's

termination of Scaduto from further performance under a certain September 28, 2006

Subcontractor Agreement by and between Agency and Scaduto (the "Subcontractor Agreement")

relative to work, labor and services (the "Work") performed by Scaduto as Agency's roofing

subcontractor for the benefit of the United States Postal Services for the Mott Haven Post Office

located at 517 East 139th Street, Bronx, New York (the "Post Office"); and (ii) pursuant to Rule

12(b)6 of the Federal Rules of Civil Procedure dismissing Agency's two counterclaims sounding

in negligence and contractual indemnity for alleged legal insufficiency.

Scaduto's 12(b)(6) motion should be denied in its entirety because it relies upon a

misplaced interpretation of narrow legal authority in an attempt to insulate itself from damages in

excess of SEVEN HUNDRED THOUSAND DOLLARS ($700,000.00) resulting directly from

Scaduto's negligent conduct at the Post Office. Scaduto's breach of the independent duty to

exercise due care in connection with the Work triggered an abrupt ignition of heavy fire (the

"Fire") and resultant damage to the Post Office which required the evacuation of fifteen (15)

postal employees and reported injuries to seventeen members of the Fire Department of New

York. (See Exhibit F).

In the event this Honorable Court deems it appropriate to award Scaduto summary

judgment pursuant to Rule 12(c), such award should be strictly limited to liability, only, and

Scaduto must be required to prove its damages subject to Agency's proper right to set-off based upon its legitimate counterclaims.

Pursuant to the terms of the prime contract entered into by and between Agency and the United States Postal Service pursuant to which Agency served as general contractor to perform extensive renovations and improvements to the Post Office (the "Prime Contract"), Agency was ultimately responsible to hold harmless the Postal Service for any and all damage sustained by the Post Office arising out of Agency's performance of construction services (See ¶ B.203, Exhibit D). By reason of this absolute obligation, and solely by reason of the Fire, Agency was required to provide extensive work, labor and services in excess of SEVEN HUNDRED THOUSAND DOLLARS ($700,000.00) to remediate the property damage to the Post Office resulting from Scaduto's negligent performance of its roofing duties.

For the reasons set forth more particularly herein, Scaduto's attempt to rely upon limited legal authority that is distinguishable from the facts and circumstances before this Honorable Court must be denied. Likewise, upon denying Scaduto's motion to relieve it of its significant and substantial liability to Agency that is approximately ten (10) times the damages claimed, Scaduto's motion for summary judgment relative to damages arising out of Agency's alleged breach of contract must also be denied as premature.

In the event that this Honorable Court does award to Scaduto judgment on the pleadings with respect to the issue of Agency's liability arising out of Scaduto's termination, any such award should be strictly limited to liability only and the issue of damages, if any, should be subject to discovery as well as Agency's right to set-off by reason of the extensive and far greater damages suffered by Agency as articulated in its counterclaims.

<u>Uncontested Facts Established by the Pleadings</u>

Agency does not dispute the limited factual allegations set forth by Scaduto in its

submission to the Court to the extent that Scaduto references certain documents that are relevant

to this action, its reference to the chronology of events leading to the Fire, the transmittal of

written notice by Agency terminating Scaduto, or Scaduto's characterization of the relief

requested in the respective pleadings of both Scaduto and Agency.

<u>Argument</u>

I.     <u>Agency Has Properly Pled A Cause of Action Sounding in Negligence</u>

Agency has properly pled a cause of action in its counterclaim against Scaduto sounding

in negligence and Scaduto's motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure to dismiss Agency's counterclaims set forth in Agency's Verified Answer should be

denied.

A.     <u>The Legal Standard On a Motion to Dismiss Under Rule 12(b)(6)</u>

"When deciding a motion to dismiss under Rule 12(b)(6), [the Court] must construe the

complaint liberally,[1] accepting all factual allegations in the complaint as true, and drawing all

reasonable inferences in the pleader's favor." <u>AGFA Corp. v. United Mktg. Group, Inc.,</u> No. 02

Civ 8648 (Preska, J.), 2003 WL 2155087, *2 (S.D.N.Y. Jul. 10, 2003) (citing <u>Chambers v. Time

Warner, Inc.,</u> 282 F.2d 147, 152 (2d Cir. 2002)). "The issue is not whether a plaintiff will

ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." <u>Id</u>.

---

[1] "Pursuant to the simplified pleading standard of Rule 8(a), a complaint need only to include a short and plain statement of the claim showing that the pleader is entitled to relief. A plaintiff need not, in other words, plead the elements of a claim." <u>Maalouf v. Salomon Smith Barney, Inc.,</u> No. 02 Civ. 4770 (SAS), 2003 WL 1858153, *3 (S.D.N.Y Apr. 10, 2003) (internal citations omitted. See also, <u>Dr. Reddy's Labs., Ltd. v. aii Pharma Inc.,</u> No. 01 Civ. 10102 (Preska, J.), 2002 WL 31059289, *10 (S.D.N.Y. Sep. 13, 2002)("Rule 8 does not require a claimant to set out in detail the facts upon which he bases his claim").

(quoting Villager Pond, Inc. v. Town of Darien, 56 F. 3d 375, 378 (2d Cir. 1995)). "Dismissal is proper only when it appears beyond doubt that the pleader can prove no set of facts in support of his claim that would entitle him to relief." Id. (quoting Cohen v. Koenig, 25 F.3d 1168, 1172 (2d Cir. 1994)). See also, Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir. 1995); Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir.), cert. denied, 513 U.S. 836, 115 S. Ct. 117 (1994); Allen v. Westpoint- Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991); Brass v. Am. Film Tech., Inc., 987 F.2d 142, 150 (2d Cir. 1993). "Indeed, it may appear on the face of the pleading that a recovery is remote and unlikely but that is not the test." Gant, 69 F.3d at 673.

Applying the foregoing legal standard to Agency's first counterclaim sounding in negligence, it is respectfully submitted that for the purposes of this motion, this Honorable Court must accept, as true, Agency's allegation set forth at paragraph 86 of its Verified Answer that the Fire "was caused or contributed to by the careless, reckless and/ or negligent [sic] acts of Scaduto, its agents, servants or employees." See, In re Motel 6, No. 93 Civ. 2183 (JFK), 200 WL 322782 *3 (S.D.N.Y Mar. 28, 2000) ("The factual allegations set forth in the complaint must be accepted as true, and the court must draw all reasonable inferences in favor of the plaintiff.")

B.    A Termination for Convenience Does Not Relieve Scaduto of Liability

Notwithstanding Scaduto's reliance upon certain, distinguishable legal authority, Scaduto's termination for convenience by Agency from further performance at the Post Office does not serve to relieve Scaduto from liability for starting the Fire that resulted in extensive property damage to the Post Office and direct damages to Agency in excess of SEVEN HUNDRED THOUSAND DOLLARS ($700,000.00).

Scaduto's purported reliance upon the holdings of the Supreme Court of the State of New York, Appellate Division, First Department in the matter of Tishman Construction Corporation

v. City of New York and that of the Appellate Division, Fourth Department in the matter of

Fruin-Colnon Corp. v. Niagra Frontier Transp. Auth. for the proposition that a termination for

convenience precludes the terminating party from bringing a counterclaim for the costs incurred

to cure a default or to perform remedial work are inapplicable to the matter at hand.   Tishman

Construction Corporation v. City of New York, 228 A.D.2d 292 (1st Dept 1996);  Fruin-Colnon

Corp. v. Niagra Frontier Transp. Auth.,42 A.D.3d 905 (4th Dept 2007).

   The aforementioned holdings are distinguishable from the instant litigation by reason of

the fact that Agency does not seek damages against Scaduto to cure Scaduto's default or to

otherwise remediate Scaduto's defective work preformed under the Subcontract.

   Instead, Agency's counterclaims arise out of Scaduto's tortious conduct that caused the

Fire which, pursuant to the express terms of the Prime Contract, Agency had a direct obligation

to remediate.  In doing so, Agency was caused to expend many hundreds of thousands of dollars

in construction costs to rebuild those parts of the Post Office destroyed by the fire that were

never contemplated to be part of the "bargain" between Agency and Scaduto arising out of the

Subcontract Agreement.

   A meaningful analysis Tishman (supra) and  Fruin-Colnon Corp. (supra) indicates that the

holdings in both are narrowly tailored to a certain type of counterclaim not present in the instant

matter.  They are therefore inapplicable to Agency's cause(s) of action to recoup its extensive

damages resulting from Scaduto's tortious conduct that caused the resulting Fire.

   Tishman is an action involving a construction management contract entered into by and

between Tishman Construction Corporation ("Tishman") and the City of New York.  The City of

New York terminated Tishman's services pursuant to a section of the contract that permitted

termination with or without cause and limited further contract payments to those invoices due

and owing at the time of termination. Tishman commenced an action to obtain payments claimed due and owing under the contract and the City of New York counterclaimed "for damages incurred to cure plaintiff's alleged breach as well as for alleged overpayments." Tishman, supra.

The City of New York appealed, inter alia, that part of the lower court's order that dismissed its counterclaims for damages arising out of Tishman's default. The Appellate Court affirmed the lower court and held, in relevant part, "Where the City elects to terminate for convenience, as provided in section 15, whether with or without cause, it cannot counterclaim for the cost of curing any alleged default (see, Fruin-Colnon Corp. v. Niagra Frontier Transp. Auth., 180 AD2d 222, 233)." Tishman, Supra.

Contrary to Scaduto's misplaced reliance, the critical issue in Tishman was not whether the City of New York's counterclaims were dismissed by reason of the City having terminated Tishman for convenience. Rather, it was the nature of the counterclaims asserted and the damages claimed by the City that formed the basis for the Court's holding. Tishman, supra.

Notwithstanding the fact that the Tishman Court did not state with particularity the nature of the City's counterclaims that were dismissed, a later Decision and Order of the Honorable Marilyn Shafer, J.S.C., dated March 21, 2002, that decided the City of New York's motion to set aside the verdict in the same litigation, illuminates the actual counterclaims asserted by the City of New York against Tishman. Tishman v. City of New York, 2002 WL 34358010 (N.Y.Sup) (Trial Order).

Justice Shafer identified the City's counterclaims as follows, "The City's counterclaims for the costs of curing any alleged default, including for design and construction error, theft and vandalism, and the Project's unreasonable delays, were dismissed (see Tishman Construction

Corporation v. City of New York, 228 AD2d 292 [1st Dept 1996])." Tishman v. City of New York, 2002 WL 34358010 (N.Y.Sup) (Trial Order).

Thus, the City's counterclaims in Tishman clearly arose out of Tishman's failure to perform its obligations arising directly, and particularly, out of the contract between the parties. Unlike the counterclaims in the instant action in Tishman. The counterclaims did not sound in tort nor did they arise from a breach of a duty independent of the contract. The City, having terminated its contract with Tishman, could not then counterclaim in contract against Tishman. Agency does not counterclaim in contract against Scaduto and the facts before this Honorable Court bear no resemblance to those in Tishman.

Fruin-Colnon Corporation, Traylor Bros., Inc. and Onyx Construction & Equipment, Inc. v. Niagra Frontier Transportation Authority is a matter in which a joint venture, as contractor, commenced an action against the relevant transportation authority claiming breach of contract for failure to pay for the excavation and creation of two (2) tunnels, each approximately two (2) miles long, to be used in conjunction with a municipal light rail system. Fruin-Colnon Corporation, Traylor Bros., Inc. and Onyx Construction & Equipment, Inc. v. Niagra Frontier Transportation Authority, 180 AD2d 222, (4th Dept 1992).

The Appellate Division, Fourth Department was presented with two (2) claims asserted on behalf of the plaintiffs. First, plaintiffs claimed that during the excavation process it encountered a "differing site condition" entitling it to receive additional compensation over and above the contract price. Second, the parties disputed "responsibility for rectifying the infiltration of water into the tunnels" and plaintiffs claimed damages arising out of the failure to receive reimbursement for remedial grouting efforts.

The defendant asserted two (2) counterclaims. First, defendant, Niagra Frontier Transportation Authority alleged that the watertightness issue was the responsibility of the plaintiffs and sought to recover actual damages for the payments made to third parties for remedial waterproofing. Additionally, the defendant counterclaimed seeking the to recoup the funds "paid to third parties to test the tunnel and bring it into compliance with the contract requirements." Fruin-Colnon, at 225.

The Fourth Department engaged in an analysis of the facts, the parties' course of dealing and various construction issues. Central to its holding was the Court's finding that the defendant was found to have improperly terminated the plaintiffs from further performance under the contract and that defendants improperly engaged third parties to remediate defective conditions that were contract obligations without providing plaintiffs the opportunity to cure such defects. The Fruin-Colnon Court held, in relevant part, as follows:

> Defendant's wrongful termination of plaintiff deprived plaintiff of its contractual right to attempt to cure the water leaks at defendant's expense before defendant could hire third parties. Under the terms of the contract, defendant's wrongful termination of plaintiff for default is deemed to be a termination for convenience of defendant. For that reason, defendant is not entitled to reimbursement for payments made to third parties hired to carry out remedial grouting. Also, because termination of plaintiff is deemed to be for the defendant's convenience, defendant is not entitled to recover liquidated damages under the contract. Therefore, the court properly denied defendant recovery on its watertightness counterclaim.

Similarly, the court did not err in denying defendant recovery for payments made to third parties for testing of the tunnel liner and repair of alleged defects in it, specifically, for grouting of 17 voids behind the liner and remediation of two of the 18 spots where the liner was less than the required thickness. Denial of defendant's tunnel thickness counterclaim follows as a matter of course from the foregoing determination that defendant wrongfully terminated plaintiff. Under the general warranty provisions of the contract, defendant had the right to remedy any defect at plaintiff's expense, but only if plaintiff first had been granted the opportunity to cure the defect and had failed to do so. Here, defendant did not discover the alleged defects in the tunnel, and did not incur the costs of third party remedial efforts, until after it had wrongfully terminated plaintiff. Defendant never instructed plaintiff to repair the defects in the tunnel liner. Thus, plaintiff was not accorded its contractual right to attempt to cure the alleged defects before being charged with the costs of third party remedial work. Defendant's wrongful termination of plaintiff, and defendant's failure to follow the contract's warranty procedure, compels denial of its tunnel thickness counterclaim.

Fruin-Colnon, supra at 233-234.

Thus, the Court's rationale in denying the defendant's counterclaims is intuitive and easily understood. Quite simply, when a contract affords a party the opportunity to cure a default under a contract or defect in workmanship prior to termination or the terminating party engaging a third party to conduct remedial work, a termination for convenience necessarily precludes the terminated party from the opportunity to cure and/or the opportunity to satisfactorily perform under the relevant contract.

The terminating party may not strip the other of the fundamental right to cure and then also seek to impose upon such party the costs of remediation to obtain the agreed upon purported

benefit of the bargain under the contract.  If the terminated party had been afforded the right to

cure, the remediation costs may never have been incurred and it is for that reason that a

counterclaim for remedial work will not lie in the face of a termination for convenience.

Tishman, supra; Fruin-Colnon, supra.

The counterclaims in the instant action, however, do not allege damages that Scaduto

could have remediated had it not been terminated.  Again, Agency's counterclaims against

Scaduto do not allege defective work product by Scaduto or that Scaduto's tortuous act required

remedial work to secure proper performance under the terms of the Subcontract.  Rather, the

instant counterclaims allege that Scaduto's tortious conduct caused enormous damage that

Agency was obligated to immediately remediate as general contactor under the Prime Contract.

Scaduto's conduct, having nothing to do with its performance under the Subcontract, caused the

Fire.

Articulated differently, Agency's counterclaims do not complain as to how Scaduto

performed pursuant to the Subcontract, nor does Agency presently allege that the work Scaduto

did complete under the Subcontract was, by itself, defective or unworkmanlike.

While the defendant in Fruin-Colnon claimed that the work performed by the terminated

party was improperly performed (ie: the tunnel leaked), Agency's counterclaim quite differently

alleges that the Fire, whose consequences required remediation to the entire building on a grand

scale to the Post Office that encompassed far more than just the roof that was the subject of the

Subcontract, was caused by the carelessness, negligence, and/or reckless conduct of Scaduto.

Agency's counterclaims are entirely beyond and independent of the work to be performed under

Subcontract.

C.    Agency's Counterclaims Are Supported by an Independent Duty of Care in Tort

The existence of an express contract between Scaduto and Agency is irrelevant to the

viability of Agency's counterclaims based upon Scaduto's independent duty in tort to not act in a

tortious manner.

Agency does not quarrel with Scaduto's reference to the fundamental theory of law which

provides "that a simple breach of contract is not to be considered a tort unless a legal duty

independent of the contract itself has been violated." Clark-Fitzpatrick, Inc. v. Long Island R.R.

Co., 70 N.Y.2d 382, 521 N.Y.S.2d 653, 656 (1987) (citations omitted).

Notwithstanding the foregoing, Scaduto fails to reference the rationale behind this

seminal decision of the Court of Appeals of New York.  The Court of Appeal supported its

holding by stating, in relevant part:

> Here, plaintiff has not alleged the violation of a
> legal duty independent of the contract.  In its cause
> of action for gross negligence, plaintiff alleges that
> defendant failed to exercise "due care" in designing
> the project, locating utility lines, acquiring
> necessary property rights, and informing plaintiff of
> problems with the project before construction
> began.    Each of these allegations, however, is
> merely a restatement, albeit in slightly different
> language, of the "implied" contractual obligations
> asserted in the cause of action for breach of contract
> (internal citations omitted).
>                              * * *
> Moreover, the damages plaintiff allegedly sustained
> as a consequence of defendant's violation of a "duty
> of care" in designing the project were clearly within
> the contemplation of the written agreement, as
> indicated by the design change and adjusted
> compensation provisions of the contract.

Clark-Fitzpatrick, Inc., at 390.

The import of <u>Clark-Fitzpatrick's</u> that damages therein claimed to be in tort, were identical to those that formed the claim for breach of contract. <u>Id.</u>

Although <u>Clark-Fitzpartick, Inc.</u> remains legal authority preventing litigants from converting a standard claim for breach of contract into a claim sounding in tort, this holding and its progeny do not serve to insulate tortfeasors from liability simply because a valid contract exists between the parties. To the contrary, sound legal authority recognizes that there exist situations where the presence of a contract will not obviate a claim sounding in tort.

Eight (8) years after its holding in <u>Clark-Fitzpatrick</u>, in the matter of <u>New York University v. Continental Insurance Company</u>, 87 N.Y.2d 308 (1995), the Court of Appeals of New York again confirmed that a cause of action sounding in tort may stand notwithstanding a contract between the parties. In its own words, the Court of Appeals of New York held, in relevant part:

> A tort obligation is a duty imposed by law to avoid causing injury to others. It is "apart from and independent of promises made and therefore apart from the manifested intention of the parties" to a contract (Prosser and Keeton, Torts § 92, at 655 [5th ed.]). Thus, defendant may be liable in tort when it has breached a duty of reasonable care distinct from its contractual obligations, or when it has engaged in tortuous conduct separate and apart from its failure to fulfill its contractual obligations. The very nature of a contractual obligation, and the public interest in seeing it performed with reasonable care, may give rise to a duty of reasonable care in performance of the contract obligations, and the breach of that independent duty will give rise to a tort claim (see, Sommer v. Federal Signal Corp., 79 N.Y.2d 540, 583 N.Y.S.2d 957, 593 N.E.2d 1365).

<u>New York University</u>, at 316.

The reference by the <u>New York University</u> Court to the matter of <u>Sommer v. Federal Signal Corporation, et al.</u> is particularly germane to the instant matter. In <u>Sommer</u>, the Court of Appeals was presented with a claim sounding in gross negligence brought by a property owner against a fire alarm company that it had contracted with to provide fire alarm monitoring services. <u>Sommer v. Federal Signal Corporation, et al.</u>, 79 N.Y.2d 540, 583 N.Y.S.2d 957 (1992).

By way of background, in 1985, 810 Associates were the owners of a forty two (42) story building in Manhattan. The building was equipped with a central station fire alarm system and Holmes Protection, Inc. ("Holmes") was engaged by contract to provide monitoring services such that upon receiving notice of a fire alarm at the building, Holmes would immediately notify the fire department.

One Saturday morning, the building requested that Holmes deactivate the monitoring system so that certain work could be done at the property. In accordance with Holmes's standard procedure, a few hours after deactivation, the system was restored. However, on the following Monday morning, an engineer at the building who was unaware of the prior reactivation requested that the system be restored.

As a result of the telephone conversation had with the building engineer, the Holmes representative, characterized as an untrained, inexperienced substitute, became confused and believed that the building engineer wanted the building's monitoring service once again deactivated. Approximately seven (7) to nine (9) minutes after the second deactivation, Holmes began to receive fire signals from the building. "However, consistent with his mistaken impression that the system was to be taken *out of service,* the dispatcher simply assumed that he

should ignore those signals." A four alarm fire ensued and damages exceeded SEVEN

MILLION DOLLARS ($7,000,000.00).

Of the litany of lawsuits that followed, 810 Associates brought an action against Holmes

sounding in both breach of contract and negligence. Sommer, at 549.

As a threshold matter, the Court of Appeals opined, "Initially, we must determine

whether 810 may pursue tort claims against Holmes, or is limited to breach of contract remedies.

Holmes argues that its duties arose solely from its contractual undertaking and thus this case at

most presents a breach of contract." Sommer, at 550.

As part of the foregoing query the Court of Appeals referenced certain "borderland"

matters that do not fit squarely into either a claim for breach of contract or tort and held, in

relevant part:

> These borderland situations most often arise where
> the parties' relationship initially is formed by
> contract, but there is a claim that the contract was
> performed negligently. That is the case here.
> Holmes owned no duty to 810 prior to their
> contract; once they had contracted, however,
> Holmes had certain obligations to 810, including a
> duty to made timely reports to the fire department.
> The question is whether Holmes' failure to report,
> allegedly the result of negligence, is a breach of
> contract, a tort, or both.

Sommer, at 550.

In finding that an independent duty of care existed to support a cause of action sounding

in tort, and not solely breach of contract, the Court of Appeals held, in relevant part:

> Our conclusion rests as well on the manner which
> the injury arose in this case and the resulting harm,
> both typical of tort claims. In contrast to the tile
> purchaser in *Bellevue*[2] or the general contractor in
> *Clark-Fitzpatrick*, 810 is not seeking the benefit of
> its contractual bargain, but instead seeks recovery of
> damages from a fire that spread out of control- the
> sort of "abrupt, cataclysmic occurrence" referenced
> in *Bellevue*."

Sommer, at 553.

Identical to the plaintiff in Sommer, Agency does not bring its claim for negligence to

secure the benefit of its contractual bargain which was inarguably to secure certain roofing

related work, labor and services at the Post Office. (Exhibit E). Instead, Agency is forced to

bring its counterclaims to recoup the more than SEVEN HUNDRED THOUSAND DOLLARS

($700,000.00) expended to repair the Post Office after the abrupt and cataclysmic fire that

resulted from Scaduto's tortious act.

Subsequent to the Court of Appeals' decision in Sommer, the Appellate Division, First

Department was faced with a matter in which a property owner brought an action against a

general contractor claiming, inter alia, negligent design and construction of a façade of a

building. Trustees of Columbia University In the City of New York v. Gwathmey Siegel and

Associates Architects, et al., 192 A.D.2d 151, (1st Dept 1993).

In Trustees of Columbia University, the plaintiff alleged causes of action in both breach

of contract and negligence arising out of the design and construction of a student housing

---

[2] In the matter of Bellevue South Associates v. HRH Construction Corporation et al., 78 N.Y.2d 282, 574 N.Y.S.2d 165 (1991), the Court of Appeals of New York denied plaintiff relief sounding in products liability and negligence for defective floor tiles holding that remedy of the home owner for defects in floor tiling was limited to enforcement of the contract obligations because the failure of the tile lamination "was not personal injury or property damage, but solely injury to the product itself. The injury, moreover, was not an abrupt, cataclysmic occurrence, as in *Dudley* or *Pennsylvania Glass Sand*, but a process of failure of the product to perform as anticipated under normal business conditions—a traditional breach of contract situation." Bellevue, at 294.

complex for which the defendants were contracted to perform.

After a "large chunk of the facade fell into the complex's internal courtyard", an investigation revealed "extensive cracking of tiles, deteriorated caulking, corroded and improperly set fasteners, deteriorated lath and severe displacement of tile panels." Trustees of Columbia University, at 153.

The trial court in Trustees of Columbia University granted the defendants' motion for summary judgment to the extent of dismissing plaintiff's causes of action in negligence and strict liability.

The Appellate Division of the First Department reversed the dismissal of the negligence claim and reinstated it holding, "Contrary to the IAS court, we find that, particularly given the fact that only limited discovery has taken place, plaintiff has made a showing that Morse/Diesel bore and breached, a 'legal duty independent of the contract itself' (Clark-Fitzpatrick, Inc. v. Long Is. R.R. Co., 70 N.Y.2d 382, 389, 521 N.Y.S.2d 653, 516 N.E.2d 190) sufficient to withstand summary judgment on its cause of action for negligence." Id., at 154. Of particular significance to the Trustees of Columbia University Court was its finding that the project in issue involving construction for a "tall building in a heavily trafficked public area of a college campus, is so affected with the public interest that the failure to perform competently can have catastrophic consequences." Id., at 154. In noting the obvious public interest of the construction project, the Court further opined: "This is one of the most significant elements in determining whether the nature of the type of services rendered gives rise to a duty of reasonable care independent of the contract itself (Sommer v. Federal Signal Corp., 79 N.Y.2d 540, 553, 583 N.Y.S.2d 957, 593 N.E.2d 1365). Id., at 154.

Identical to the compelling public interest of the construction project in Trustees of Columbia University, the matter before this Honorable Court involves a United States Post Office that obviously not only serves the public interest, but also welcomes the general public through its doors to conduct some of their most important business and personal affairs.

In sum, controlling legal authority recognizes that the existence of a contract between parties will not insulate a tort feasor from liability simply because a contract exists. To hold to the contrary would effectively insulate a negligent party from the ramifications of such negligence, regardless of the extent of the damages incurred, simply because the parties entered into a contract.

Certainly, Agency would have no claim sounding in tort if the roof liner installed by Scaduto leaked or if some of the work product needed to be remediated due to poor installation. However, the facts and circumstances supporting Agency's counterclaims are so far beyond the four corners of the Subcontract, and could not possibly have been contemplated by the parties to have been within the benefit of the bargain reached, that to suggest that Scaduto would not be liable for SEVEN HUNDRED THOUSAND DOLLARS ($700,000.00) resulting from its tortuous act is palpably improper. Scaduto's self-serving allegation that Agency some how forfeited the right to counterclaim against Scaduto is patently absurd and should be rejected.

Notwithstanding the aforementioned legal standard applicable to a motion to dismiss pursuant to Rule 12(b)(6) pursuant to which this Honorable Court must accept, as true, the factual allegations averred by Agency such that for the purposes of Scaduto's motion, Scaduto's tortuous conduct resulted in the Fire, if this Honorable Court determines that Agency's counterclaim does not sufficiently plead such cause of action by reason of referring to Scaduto's

breach of an independent duty of care, than in that event, any ruling by this Honorable Court should permit Agency to replead its counterclaim to articulate such fact.

II.    Summary Judgment As To Damages Is Premature

Agency acknowledges the principle of law concerning the liability arising out of termination for convenience and does not quarrel with the proposition that from a technical viewpoint, Scaduto may be entitled to judgment as to liability, only.

The issue of damages, if any, must be subject to discovery and Scaduto must be put to its proof with respect to the amounts claimed in this action. To date, Agency has not been afforded any opportunity to conduct discovery with respect to Scaduto's claim and therefore cannot properly defend itself with respect to the amount claimed due by Scaduto.

As reference by Scaduto's counsel at page 20 of its Memorandum of Law, the "proper amount owned to Scaduto," if any, "is reserved for the calculation of damages, not the liability determination the pleadings establish.

Moreover, and notwithstanding Scaduto's claim that Agency's counterclaims should be dismissed, upon denial of such application and Agency being permitted to prosecute its counterclaims, the issue of damages should be reserved and continued until the time of trial of this action because when Scaduto's liability in tort to Agency is found by this Honorable Court, the approximate SEVENTY EIGHT THOUSAND DOLLARS ($78,000.00) will pale in comparison and be entirely set-off by the more than SEVEN HUNDREND THOUSAND DOLLARS ($700,000.00) due and owing to Agency.

Conclusion

For the foregoing reasons, Scaduto's motion pursuant to dismiss Agency's counterclaims should be denied in its entirety, any award of summary judgment on the pleadings in favor of Scaduto, if any, should be limited to liability, only, and not include damages together with such other and further relief as to this Court is deemed to be just and proper.


Dated: White Plains, New York
       August 1, 2008

                                    DelBello Donnellan Weingarten
                                    Wise & Wiederkehr, LLP
                                    Attorneys for Defendant
                                    Agency Construction Corp.

                                    By: /s/ Evan Wiederkehr
                                    Evan Wiederkehr (EW9488)
                                    One North Lexington Avenue
                                    White Plains, New York  10601
                                    (914)  681-0200

Of Counsel:

Eliot Schuman, Esq.