| | |
|---|---|
| THE UNITED STATES OF AMERICA for the use and benefit of J. SCADUTO & SON, INC., <br><br> Plaintiff, <br><br> v. <br><br> LIBERTY MUTUAL INSURANCE CO. and AGENCY CONSTRUCTION CORP., <br> Defendants. | UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK <br><br><br> Civil Action No. 08 CV 01885 (GEL) <br> "ECF Case" |

PLAINTIFF J. SCADUTO & SON, INC.'s REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS RULE 12 MOTION FOR JUDGMENT ON THE PLEADINGS AND DISMISSAL OF DEFENDNAT AGENCY CONSTRUCTION CORP.'s
<u>COUNTERCLAIMS</u>

THE LAW OFFICES OF PAUL A. MONTUORI, P.C.
Paul A. Montuori, Esq. (PM 5787)
*Attorney for Plaintiff J. Scaduto & Son, Inc.*
265 Post Ave., Suite 270
Westbury, NY 11590
Phone (516) 338-4714
Facsimile (516) 334-2539
pmontuori@montuorilaw.com

Of Counsel:

Kevin C. Palmeri, Esq. (KP 7556)
The Law Offices of Kevin C. Palmeri, LLC
2100 Deer Park Ave., Suite 3
Deer Park, NY 11729

William G. Kelly (WK 2982)
Goldberg Segalla LLP
170 Hamilton Ave., Suite 203
White Plains, NY 10601

## TABLE OF CONTENTS

Table of Authorities ....................................................................................................... ii

Summary of Reply........................................................................................................... 1

Argument........................................................................................................................ 1

I. The Subcontract Agreement Expressly Provides for the Recoupment of Remediation Damages Resulting from J. Scaduto's Alleged Negligence.................................................................. 1

    a. Agency's Own Pleading Defeats Its Negligence Claim and Offers No Facts Giving Rise to J. Scaduto's Independent Tort Duty............................................................................4

II. The Cases Agency Cites are Readily Distinguishable on their Facts and do not Involve Instances Where a Termination for Convenience was Declared............................................5

    a. The Termination for Convenience Curtails Agency's Offset Rights and Forces Agency to Support Untenable Legal Anomalies..........................................................9

III. Agency, a Sophisticated Contracting Entity, Made Deliberate Choices on the Project........10

Conclusion......................................................................................................................10

TABLE OF AUTHORITIES

Cases

*Briar Contracting Corp. v. City of New York*, 156 A.D.2d 628, 550 N.Y.S.2d
(2d Dept. 1998)..............................................................................................5

*Board of Educ. v. Sargent*, 71 N.Y.2d 21, 523 N.Y.S2d 475 (1987)...............................3, 4

*Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 NY2d 382,
521 N.Y.S.2d 653 (1987) ...........................................................................3, 4, 6

*County of Suffolk v. LILCO*, 728 F.2d 52 (2d Cir. 1984)......................................8

*Highland Capital Management, L.P. v. Schneider*, 533 F. Supp. 2d 345
(S.D.N.Y. 2008).............................................................................................9

*Hydro Investors, Inc. v. Trafalgar Power, Inc.*, 227 F. 3d 9 (2d Cir. 2000)..................8

*Joseph v. Schwartz/Architectural Services, P.C.*, 957 F. Suppp. 1334
(S.D.N.Y. 1993).......................................................................................passim

*Lib. Mutual Ins. Co. v. N. Picco & Sons. Contracting*, 2008 WL 190310
(S.D.N.Y. January 16, 2008)............................................................................5

*Novelty Crystal v. PSA Inst*, 49 A.D.3d 113, 850 N.Y.S.2d 497
(2d Dept. 2008)..............................................................................................1

*532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.*, 271 A.D.2d 49,
711 N.Y.S.2d 391 (1st Dept. 2000)....................................................................8

*Matter of Manitt Constr. (J.S. Plumbing)*, 50 Misc.2d 502, 270 N.Y.S.2d 716
(Sup. Ct. Queens 1966)...................................................................................9

*Matter of Zimmerman v. Cohen*, 236 N.Y. 15, 139 N.E. 764 (1923)............................9

*Morse/Diesel v. Trinity Indus.*, 859 F.2d 242 (2d Cir. 1988).....................................7

*Paragon Restoration Group v. Cambridge*, 42 A.D.3d 905
839 N.Y.S. 2d 658 (4th Dept. 2007)..............................................................8, 9

*Paterson v. Balsamico*, 440 F.3d 104 (2d Cir. 2006)..............................................9

*Smalley v. Dreyfus Core*, 10 N.Y. 3d 55, 853 N.Y.S.2d 270 (2008)..........................................2

*Sommer v. Federal Signal Corporation, et. al.*, 79 N.Y.2d 540, 538 N.Y.S.2d 957……………..6

*Tishman Constr. Corp. v. Great American*, 2008 WL 2649486, 2008 N.Y. Slip Op 06177 (1st Dept. July 8, 2008)………………………………………………………………………….7

*Trustees of Columbia University v. Gwathmey Siegel & Associates Architects, et. al.*, 192 A.D.2d 133, 420 N.Y.S.2d 36 (3d Dept. 1970)……………………………………………..*passim*

Federal Rules

Fed. R. Civ. P. 12 ……………………………………………………………...........................2, 4

Other Authorities

Calamari & Perillo, *Contracts* (2d ed.)……………………………………....……………...............4

Postner & Rubin, *New York Construction Law Manual* (West 2d. ed. 2006)………………7

*Restatement [Second] of Contracts* (1979)……………………………………………….3, 4

Summary of Reply

Defendant Agency's Opposition does not, and cannot, take issue with the fact that the termination for convenience issued by way of the May 22 Fax creates contract liability and limits the contract remedies it can seek. Agency does not contest the lack of 24 Hour notice. Rather, in its frantic efforts to defeat the implications of the May 22 Fax, Agency asserts that its negligence counterclaim should somehow be maintained. Yet, Paragraph Eleventh of the Subcontract Agreement expressly provides the exact remedy Agency seeks in tort. This Court need look no further than the allegations found in Agency's own breach of contract counterclaim to ascertain how its negligence claim is nothing more than a rewording of the contract claim, and therefore not legally cognizable. J. Scaduto freely assumed indemnification liability for its potential negligence in bargained for covenants contained in the Subcontract Agreement. Agency has attempted to enforce these very covenants in a contract counterclaim.

Argument

I. The Subcontract Agreement Expressly Provides for the Recoupment of Remediation Damages Resulting from J. Scaduto's Alleged Negligence

Tort claims that arise from a provision of a contract cannot be maintained. *See Novelty Crystal v. PSA Inst.*, 49 A.D.3d 113, 120, 850 N.Y.S.2d 497 (2d Dept. 2008). Here, Agency's negligence claim is "nothing more than a contract claim in tort clothing." *Id.* This Court can confirm this point by simply referencing the broad obligations of the Subcontract Agreement, and Agency's own pleading.

Paragraph Eleventh of the Subcontract Agreement, affirmatively cited by Agency's pleading in support of its claim, states that J. Scaduto is to:

> protect and indemnify the said Contractor [Agency]
> against any loss or damage suffered by any one through

1

> the *negligence* of the Sub-contractor [J. Scaduto], or those employed by him or his agent or servants, he shall bear any expense which the Contractor [Agency] may have by reason thereof, or on account of being charged therewith.

Subcontract Agreement at ¶ 11 (emphasis added); *See also* Ans. at ¶ 91. The exact damages that Agency claims it may seek in tort (remediation costs from the subcontractor's alleged negligence) are expressly embodied in this Subcontract Agreement.

Recently, the New York Court of Appeals confirmed the principle that a party "cannot recover damages for what is at bottom an alleged breach of contract in the guise of a tort." *Smalley v. Dreyfus Core*, 10 N.Y. 3d 55, 59, 853 N.Y.S.2d 270 (2008). Initially, the fault in Agency's position lay in its failure to recognize that all remediation costs arising from any of J. Scaduto's negligent acts were recoverable via a contract provision it insisted upon, and was intended for its benefit. Agency's already tenuous assertion that its remediation efforts had "nothing to do with [J. Scaduto's] performance under the Subcontract," Def. Opp. at 10[1], belies the legally significant fact – Agency guaranteed in its Subcontract Agreement that it would be able to recoup all of its damages from J. Scaduto no matter how such damage came about, or whatever the cost.[2]

---

[1] Reference to Defendant Opposition are cited herein as "Def. Opp. at ____." References to the Subcontract Agreement, appended as an exhibit to the Amended Complaint, are cited as "Subcontract Agreement at____," whereas Agency's Answer is cited as "Ans. at____." J. Scaduto disagrees with the implications of the documents annexed as Exhibit F to the Declaration of Evan Wiederkehr, Esq., and in any events submits that they are not legally germane to offer resistance to plaintiff's Rule 12 motion.

[2] Agency's argument seemingly suggests - paradoxically - that if the fire happened to be caused as a result of J. Scaduto's faulty contract performance, Agency would not be able to maintain a negligence action because damages resulting from such unworkmanlike performance, like a leaky roof (Def. Opp. at 17), are covered by the Subcontract Agreement. Yet, it is of no consequence as to how or what kind of damage J. Scaduto may have caused because all of Agency's remediation costs were recoverable by the contract it formed. *(Continued...)*

Agency now attempts to mask the facts by calming that its alleged remediation expenditures were not part of the "bargain," Def. Opp. at 5, and that its counterclaims are "far beyond the four corners of the Subcontract, and could not possibly have been contemplated by the parties." Def. Opp. at 17. Yet, the parties contemplated this precise eventuality by including the broad subcontractor indemnification provisions of Paragraph Eleventh. Paragraph Eleventh contains no monetary limit to the amount of indemnity (encompassing, as Agency suggests, even "enormous," "sudden" and "catastrophic" claims), contains no limit on the type of subcontractor negligence giving rise to indemnity, and could have provided Agency with a complete and full remedy, had it so chosen. Therefore, as Agency itself articulates, this circumstance falls squarely within the purview of *Clark-Fitzpatrick* because "the damages therein claimed to be in tort, were identical to those that formed the claim for breach of contract." Def. Opp. at 12; *see* Point I. a., *Infra*.

The New York Court of Appeals decision in *Board of Educ. v. Sargent*, 71 N.Y.2d 21, 523 N.Y.S.2d 475 (1987), is both instructive and controlling. Similar to the plaintiff in *Sargent,* counterclaimant Agency seeks only pecuniary damages and alleges "[n]o legal duty independent of J. Scaduto's contractual obligations." *Id.* at 29. Moreover, in the construction matter at issue in *Sargent*, the court denied a contractual contribution claim among an architect and roofer by holding that allowing such claim would "do violence to settled principles of contract law which limit a contracting party's liability to those damages that are reasonably foreseeable at the time the contract is formed." *Id.* citing *Restatement [Second] of Contracts* §

---

Nonetheless, Agency has not pled facts that suggest the fire was started by anything other than J. Scaduto's subpar performance in carrying out its contract work.

3

351 [1] (1979); Calamari & Perillo, *Contracts* § 14-5, at 523 (2d ed.). As the contractor in *Sargent*, J. Scaduto "was entitled to expect at the time it contracted with [Agency] that its liability would be determined by its own contractual undertaking." *Id.* As *Sargent* articulates, "there is nothing unfair in defining a contracting party's liability by the scope of its promise as reflected by the agreement of the parties. Indeed, this is required by the very nature of contract law, where potential liability is determined in advance by the parties." *Id.*

    a. Agency's Own Pleading Defeats Its Negligence Claim and Offers No Facts Giving Rise to J. Scaduto's Independent Tort Duty

This Court need look no further than the very allegations of Agency's breach of contract counterclaim to ascertain how the negligence counterclaim is dependent upon the contract claim and plainly subject to the rule of *Clark-Fitzpatrick*. *See* Ans. at ¶¶ 90-94. The allegations of Agency's *breach of contract counterclaim* both recite the indemnification provision for negligence found in Paragraph Eleventh of the Subcontract Agreement, Ans. at ¶ 91, and state that "Agency has suffered loss and damage by reason of J. Scaduto's *negligence*...and Agency's *remediation* of same." Ans. at ¶ 92 (emphasis added).[3] Agency further pleads that it has "demanded that Scaduto honor the terms of the Subcontract and make Agency whole." Ans. at ¶ 93. Yet, despite such allegations in its own pleading, Agency attempts to credibly argue in its Opposition that its negligence counterclaim has nothing to do with the Subcontract Agreement.

---

[3] The Affidavit of Liberty Mutual, Agency's surety, while offering no impediment to the grant of plaintiff's Rule 12 relief, is significant in revealing the true contract nature of Agency's claim, and how Agency truly views this case. In attempting to defend against its liability, Agency informed Liberty Mutual that it was terminating the contract "because of Scaduto's breach of the subcontract agreement." Affidavit of Douglas Wills at ¶ 6 (internal quotations omitted). Agency informed its own surety that the *contract* offered it a defense. Agency amplifies its negligence claim now only after realizing that its breach of contract claim is legally deficient.

Despite the fact that its contract counterclaim was predicated on reimbursement for negligence, Agency goes so far as to say that it "does not bring its claim for negligence to secure the benefit of its contractual bargain." *Compare* Def. Opp. at 15 *with* Ans. at ¶¶ 91-93. Agency's Opposition conveniently distances itself from its breach of contract counterclaim, knowing full well that the factual predicate of such claim defeats the contentions of its Opposition.

Also noteworthy are the factual allegations missing from Agency's pleadings. Agency's counterclaims do not affirmatively state any facts giving rise to J. Scaduto's special duty of care outside of the contract. *See* Ans. at ¶¶ 79-94. In fact, Agency's pleading does not mention J. Scaduto's duty of care at all. *See id.* Agency does not plead that J. Scaduto was grossly negligent. *See id.* The negligence counterclaim is a mere recitation of the conduct that Agency demanded be rectified pursuant to Paragraph Eleventh of the Subcontract Agreement. *See id.* Sessions of this Court have found such duplication to be fatal to the tort claim. *See Joseph v. Schwartz/Architectural Services, P.C.*, 957 F. Supp. 1334, 1341 (S.D.N.Y. 1993) ("[n]egligence claim seek[ing] damages for same type of harm cited in [plaintiff's] contract claim" subject to dismissal).

II. The Cases Agency Cites are Readily Distinguishable on their Facts and do not Involve Instances Where a Termination for Convenience was Declared

"Simply alleging a duty of due care does not transform a breach of contract action into a tort claim." *Briar Contracting Corp. v. City of New York*, 156 A.D.2d 628, 629, 550 N.Y.S.2d 717 (2d Dept. 1998). Agency does not - and cannot validly - plead such duty. *See* Ans. at ¶¶ 79-94. J. Scaduto would owe no duty to Agency absent the Subcontract Agreement, and remuneration for negligent acts is subsumed within the agreement. *See Lib. Mutual Ins. Co. v. N. Picco & Sons. Contracting*, 2008 WL 190310 *20-21 (S.D.N.Y. January 16, 2008).

5

In each case cited by Agency, the "nature of the services," *Sommer v. Federal Signal Corporation, et. al.*, 79 N.Y.2d 540, 552, 538 N.Y.S.2d 957 (1992), and independent duties imposed by law incident to the parties' relationship serve to ground the tort claim.[4] Further, both *Sommer* and *Trustees of Columbia* involved instances where the plaintiff was the project *owner* and the defendant was the party responsible for overall design and implantation of the work, not the contractor-subcontractor tier.

First, *Sommer* expressly states that "where plaintiff is essentially seeking enforcement of the bargain, the action should proceed under a contract theory." 79 N.Y.S.2d at 551 (citing *Clark-Fitzpatrick*). Agency seeks the exact remedy the *Sommer* court would classify as a contract claim. *Sommer's* holding was further predicated on the unique fact that the defendant was a fire alarm company, stating that "[f]ire alarm companies thus perform a service affected with a significant public interest...the nature of [defendant's] services and its relationship with its customers therefore give rise to a duty of reasonable care that is independent of [defendant's] contractual obligations." *Id.* at 553.

The court in *Trustees of Columbia* was itself quick to limit its holding by stating that "not every construction project may be found to be so intimately affected with the public interest as to evoke such a separate duty." 192 A.D.2d at 152. Indeed, construction law commentators have pointed out that "[i]t must be questioned whether this case was an instance of the court wishing to make additional remedies available to Columbia [uniquely situated as a university housing students], regardless of precedents." Postner & Rubin, *New York*

---

[4] Significant is that both *Sommer and Trustees of Columbia* do not contemplate circumstances wherein liability for the consequences of negligent acts was made an express covenant in contracts that were terminated by the party seeking relief, thereby creating a sharp contrast with the present matter.

6

*Construction Law Manual* at §11:21, p. 618 (West 2d. ed. 2006). The court in *Trustees of Columbia* based its holding on the unique fact that the incident in that case involved "housing and other facilities on a crowded and much used college campus located in the heart of the largest city in the country." 192 A.D.2d at 154. Also significantly different is that the defendant in that case was a construction manager responsible for the overall design and management of a new construction project, and not a subcontractor such as J. Scaduto responsible for a discrete piece of an overhaul to an existing building.[5] *See, e.g. Morse/Diesel v. Trinity Indus.*, 859 F.2d 242, 248 (2d Cir. 1988) (direct negligence claim, and contribution claim, dismissed where "subcontractors [had] discrete, circumscribed roles in the overall construction project"). Agency does not cite a case wherein such extra-contractual tort duty was imposed on a party at J. Scaduto's subcontractor level. Such is the reason why Agency cannot plausibly plead J. Scaduto's independent duty of care. In any case, provisions such as Paragraph Eleventh are now the norm in construction contracts and are meant to eliminate argument over whether a tort is maintainable by making indemnification for tort conduct an explicit contract question. *See, e.g. Tishman Constr. Corp. v. Great American*, 2008 WL 2649486, 2008 NY Slip Op 06177 (1st Dept. July 8, 2008) (subcontractor contractually agreed to defend and indemnify project manager and owner for claims arising out of its own negligence).[6]

Courts, including sessions of this Court, have been quick to limit *Sommer* and *Trustees*

---

[5] In limiting *Trustees of Columbia*, and denying an independent tort claim, the court in *Joseph v. Schwartz/Architectural Services, P.C.*, 957 F. Supp. 1334, 1342 (S.D.N.Y. 1993), pointed out that the architect in that case was responsible for work on a "existing building," as is the building in this case.

[6] Telling is that Agency argues it is obligated to the Post Office for the acts of its subcontractor as a result of the "absolute obligation," Def. Opp. at 2, of the Prime Contract, and not any tort duty arising from the acts of the subcontractor for which it was responsible.

*of Columbia* to their particular facts, declining to create a broader rule. *See, e.g. Joseph v. Schwartz/ Architectural Services, P.C.*, 957 F. Supp. 1334, 1339 (S.D.N.Y. 1993) ("exceptions to the blanket rule [disallowing negligence claims for solely pecuniary loss]...[are] not... sufficiently broad [enough] to accommodate the tort claim advanced by plaintiff, and I therefore grant defendants motion for summary judgment on this issue"). Since the time of these cases, imposition of potential tort and contract liability on construction contractors has been the rare exception. *Compare Joseph,* 957 F. Supp. 1334; *Paragon Restoration Group, Inc. v. Cambridge Square Condominiums,* 42 A.D. 3d 905, 839 N.Y.S.2d 658 (4th Dept. 2007) (no independent tort duty found for roofer providing work on residential condominiums).

Aside from the question of duty, the "economic loss rule," stating that a "negligence action seeking recovery for economic loss will not lie," *County of Suffolk v. LILCO,* 728 F.2d 52, 62 (2d Cir. 1984), has been clarified to prohibit the type of recovery Agency seeks in negligence.[7] In a further sign of the cases limited holding, *Trustees of Columbia* "did not address the second 'guidepost' [to establish a negligence claim] established by *Sommer,* the nature of the remedy." *Joseph,* 957 F. Supp. at 1342. In *Hydro Investors, Inc. v. Trafalgar Power, Inc.,* 227 F. 3d. 8, 17 (2d Cir. 2000), the Second Circuit Court of Appeals held that "the better course is to recognize that the [economic loss] rule allows such recovery in the limited class of cases involving liability for the violation of a professional duty. To hold otherwise would in effect bar recovery in many types of malpractice actions." After *Hydro Investors,* courts have construed the limited class of cases outside the rule "to only include cases...in which

---

[7] Agency claims that it seeks damages from its out of pocket remediation expenses, not damages for its own property damage or physical injury. Thus it seeks "pure economic losses (without property damage or personal injury)...not recoverable in a negligence action, and . . . restricted to an action in contract for the benefit of its bargain." *See 532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.,* 271 A.D.2d 49, 711 N.Y.S.2d 391 (1st Dept. 2000)

8

there are professional malpractice allegations in the primary action." *Highland Capital Management, L.P., v. Schneider*, 533 F. Supp. 2d 345, 355 (S.D.N.Y. 2008). Yet, this Court may dismiss Agency's negligence claim without even referencing the nuances of the economic loss rule because the negligence counterclaim is the subject of the validly executed Subcontract Agreement.

      a.  The Termination for Convenience Curtails Agency's Offset Rights and Forces Agency to Support Untenable Legal Anomalies

This case is unlike *Sommer* and *Trustees of Columbia* in one further significant manner – the presence of a termination for convenience. In *Sommer* and *Trustees of Columbia* both a contract claim *and* a tort claim were validly presented. Here, as in *Paragon Restoration* where a negligence claim was denied in the wake of a contractual termination for convenience, Agency has given up its right to a contract claim. Thus, Agency is forced to defend the untenable position that it is liable for contract damages stemming from an agreement that allowed it to pursue indemnification for subcontractor negligence, while at the same time being able to pursue a free standing negligence claim for the very same negligent conduct it cannot pursue in the contract it freely negotiated and terminated.[8] The folly of this position solidifies the importance of Paragraph Eleventh of the Subcontract Agreement and why such a provision is included in construction contracts. To hold otherwise would render the subcontract terms meaningless, and

---

[8] This odd procedural posture would subject the negligence claim to certain affirmative and equitable defenses, resembling estoppel, laches, forfeiture and/or waiver. *See Paterson v. Balsamico*, 440 F.3d. 104, 112 (2d Cir. 2006) (waiver "refers to a litigant's intentional relinquishment of a known right"). Somewhat analogous in the construction context is the line of cases holding that when a party to a contract containing an arbitration clause takes steps inconsistent with its contractual right to arbitrate, the party waives such right. *See generally Matter of Manitt Constr. (J.S. Plumbing)*, 50 Misc.2d 502, 504, 270 N.Y.S.2d 716 (Sup. Ct. Queens 1966) citing *Matter of Zimmerman v. Cohen*, 236 N.Y. 15, 139 N.E. 764 (1923).

9

allow "back door" negligence actions to predominate contract law. Certainly, a case such as *Trustees of Columbia* would be different had the project owner initially abrogated its contract rights by terminating the contractor for convenience.

III.  Agency, a Sophisticated Contracting Entity, Made Deliberate Choices on the Project

Agency is a sophisticated, knowledgeable general contracting concern. Therefore, its issuance of a termination for convenience by way of May 22 Fax is presumed to be a knowing, voluntary, and deliberate choice. If Agency wanted to seek recompense from J. Scaduto, it could have chosen from a number of termination options. Any legal obstacles Agency may now face are products of its own decisions. Agency may be free to pursue a claim against another individual or entity that may be responsible for the fire. Other individuals or entities harmed by the fire may be able to pursue valid negligence or contract claims against J. Scaduto. However, the May 22 Fax, and express contract provisions regarding indemnification for subcontractor negligence, dispense with any claims that Agency may have against J. Scaduto, and render Agency liable for convenience damages.

## Conclusion

For the reasons set forth above, and in Plaintiff's initial Memorandum, this Court should dismiss Agency's counterclaims and find Agency liable for breach of contract.

/s/ Paul A. Montuori
By: Paul A. Montuori, Esq. (PM 5787)
Attorney for Plaintiff
265 Post Ave., Suite 270
Westbury, NY 11590
(516) 338-4714

Of Counsel:
Kevin C. Palmeri, Esq. (KP 7556)
William G. Kelly, Esq. (WK 2982)

Dated: August 8, 2008
Westbury, NY